THE BOROUGH OF MONTVALE, DEFENDANT IN ERROR, v. THE PEOPLE'S BANK, PLAINTIFF IN ERROR.

Argued July 12, 1906—Decided July 17, 1907.

1. The rights and liabilities of the makers and holders of municipal bonds which have come into existence since the general act relating to negotiable instruments (approved April 4th, 1902) took effect are determined by the provisions of that act.
2. It is no defence to an action upon a municipal bond (made and executed after the act of April 4th, 1902, took effect), in the hands of a holder "in due course," that the maker of the bond never in fact delivered it.

On error to the Supreme Court.

For the plaintiff in error, *Gilbert Collins.*

For the defendant in error, *Leon Abbett.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This is an action of replevin brought by the borough of Montvale to recover from the possession of the People's Bank certain coupon bonds, dated July 1st, 1903, payable to bearer on the 1st day of July, 1913, and made and executed by the borough, but which, it avers, were never issued or delivered by it.

The case was tried in the court below upon an agreed state of facts, from which it appeared that the bonds in suit were two of an issue of thirty $500 bonds, each of which was signed

by the mayor of the borough, one Alfred M. Crotty, sealed with the corporate seal of the municipality and duly attested by the borough clerk; that some of the bonds were sold by the borough, and the remainder were left by it in the custody of the mayor until some further disposition of them should be made by the borough; that the bonds in suit are two of those which were left in the custody of the mayor; that while in his custody, the latter hypothecated them with the defendant bank to secure the payment of a loan made by it to him; that the bank had no knowledge until long after the making of the loan and the pledging of the bonds that Crotty was not in lawful possession of them and authorized to sell and dispose of them; and, finally, that the loan made by the bank to Crotty still remain unpaid.

Upon these facts the court held, as matter of law, that there was never any delivery of the bonds in suit such as to impress upon them the quality of negotiable instruments, and that they had no legal force or existence in the hands of the defendant, and directed judgment to be entered in favor of the borough.

It will be observed that the bonds in suit were made and executed about a year after the act of the legislature entitled "A general act relating to negotiable instruments (being an act to establish a law uniform with the laws of other states on that subject)," approved April 4th, 1902 (*Pamph. L., p.* 583), went into effect. If, therefore, the class of securities generally designated as municipal bonds are subject to the provisions of that statute, the decision of this case must depend upon the application of those provisions to the facts agreed upon. That the statute does embrace this class of securities seems to us to be clear, for the following reasons:

In the first place, although the body of the act is largely a transcript of the English statute of 45 & 46 *Vict., ch.* 61, entitled "An act to codify the law relating to bills of exchange, cheques and promissory notes," our legislature discarded the title of the English statute and selected in its place one much broader in its scope, viz., a general act relating to *negotiable instruments,* with knowledge of the fact that it had then long

been settled by the decisions of this court that a municipal bond was a negotiable instrument. *City of Elizabeth* v. *Force,* 2 *Stew. Eq.* 587; *Copper* v. *Jersey City,* 15 *Vroom* 634; *Fifth Ward Savings Bank* v. *First National Bank,* 19 *Id.* 513.

In the second place, our act contains in its first section a provision (which is absent from the English statute) prescribing the requisites of a negotiable instrument, and a municipal bond complies with each of those requirements, which are as follows:

I. It must be in writing and signed by the maker or drawer.

II. Must contain an unconditional promise or order to pay a sum certain in money.

III. Must be payable on demand at a fixed or determinable future time.

IV. Must be payable to order or to bearer.

In the third place, the sixty-fifth section of our act, after prescribing that every person negotiating an instrument by delivery or by a qualified endorsement shall be held to have warranted, among other things, "that all prior parties had capacity to contract," provides that this shall not apply "to persons negotiating public or corporate securities other than notes or bills."

What, then, are the rights, if any, under our statute of the defendant bank as the holder of these bonds? The fifty-second section of the act declares that "a holder in due course is a holder who has taken the instrument under the following conditions:

"I. That it is complete and regular upon its face.

"II. That he became the holder of it before it was overdue and without notice that it had been previously dishonored, if such was the fact.

"III. That he took it in good faith and for value.

"IV. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

It appears from the agreed state of facts that the bonds are complete and regular upon their face; that the defendant became the holder of them before maturity; that it took them

for value; and that it had no knowledge until long after they came into its possession as collateral to the loan it had made to Crotty that the latter was not in lawful possession of them and authorized to dispose of them.

It is suggested that, although the bank had no knowledge of any lack of authority on the part of Crotty to dispose of the bonds, the fact that he signed them as mayor charged it with notice of the defect in his title within the meaning of the fifty-second section of the statute. But it is provided by the fifty-sixth section of the act that "to constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiable must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith." Knowledge on the part of the bank that the person to whom they made the loan was the mayor of the borough, if it had such knowledge, affords no ground for holding that its action in taking the bonds amounted to bad faith. Notwithstanding that Crotty executed them in his official capacity, he had as complete a right as any other citizen of the borough, or any member of the public at large, to become a purchaser of its securities, and the fact that he assumed to deal with them as his own in his transaction with the bank, instead of being notice to it that he was betraying the trust reposed in him by the municipality and was fraudulently putting upon the market securities which had not been issued by it, justified the bank in believing that he was in fact just what he represented himself to be by his conduct, namely, the owner of the securities. The bank is, therefore, the holder in due course of the bonds in suit, as such holder is defined by the statute.

The rights of the holder in due course and the liability of the maker of a negotiable instrument which has been put into circulation by a person other than the maker and without the authority of the latter are prescribed by the sixteenth section of the act, which is as follows: "Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto; as

between immediate parties and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or endorsing, as the case may be; and in such case the delivery may be shown to have been conditional or for a special purpose only and not for the purpose of transferring the property—the instrument; but where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him, so as to make them liable to him, is conclusively presumed," &c.

Applying to the borough the conclusive presumption which this last-cited section of the statute prescribes for the protection of a holder in due course, it must be held to have made a valid delivery of these bonds, so far as the defendant bank is concerned, and the latter is therefore entitled to retain possession of them as outstanding obligations of the municipality.

Our determination that the Negotiable Instruments act applies to municipal bonds, as well as to bills of exchange, promissory notes and checks, makes unnecessary a consideration of the interesting question argued by counsel of the respective rights of the plaintiff and defendant under the law merchant as it existed prior to the enactment of that statute.

The judgment under review will be reversed.

*For affirmance*—None.

*For reversal*—The Chancellor, Chief Justice, Garrison, Fort, Pitney, Swayze, Reed, Trenchard, Vredenburgh, Vroom, Green, Gray, J.J.   12.