JOHNSON AND KETTELL COMPANY *vs.* LONGLEY LUNCHEON COMPANY.

Worcester.    October 3, 1910. — November 22, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Bills and Notes, Bona fide* purchaser.    *Corporation.    Evidence,* Presumptions and burden of proof.    *Payment.    Practice, Civil,* Exceptions, Non-prejudicial error.

Statement by LORING, J., of the rule of law, which applies when a negotiable instrument of a corporation, the payee of which is a creditor of the officer or agent of the corporation who signed the instrument in the corporation's behalf, is used by such officer or agent to pay his individual debt to the payee, the rule being that the transaction on its face is a wrongful appropriation of the corporation's money and is deemed bad until it is shown to be good, so that the rights of the creditor depend upon whether or not the transaction is in fact what it purports to be, and no question of a purchase in good faith can arise; *and also* of the different rule, which applies when the payee of such negotiable instrument of a corporation is the officer or agent who signed it on the corporation's behalf or some third person and, after being indorsed by the payee in blank, the instrument is used by the officer or agent to pay his individual debt, the rule in such case being that the transaction is good unless it is proved to be bad, so that, if the corporation proves that the use of the instrument by its officer or agent was wrongful, the rights of the creditor depend upon whether or not he acted in good faith in receiving the instrument.

At the trial before a judge without a jury of an action against a corporation for the purchase price of certain goods, it appeared that, at a time when both the corporation and its treasurer were debtors of the plaintiff on separate accounts, the treasurer sent to the plaintiff checks of the corporation, signed by him and made out to the plaintiff as payee, with specific directions to apply them in payment of the individual account of the treasurer. No evidence was introduced to show that the use of the checks by the defendant's treasurer was proper, and the defendant, relying on the rule of law that, in the absence of such evidence under the circumstances, the creditor had no right to the checks, contended that the plaintiff should apply the proceeds thereof upon the debt of the corporation. *Held,* that, the checks not having been remitted to the plaintiff generally, but with specific directions for application to the payment of the individual debt of the treasurer, the defendant had no right to insist that they be applied upon its debt to the plaintiff, whatever its rights as to a recovery from the plaintiff of the proceeds of the checks might be.

In an action against a corporation upon an account annexed for goods sold and delivered, the defendant pleaded merely a general denial and payment. At the trial before a judge without a jury it appeared that at one time both the corporation and its treasurer were debtors of the plaintiff on separate accounts and, against the objection and subject to an exception by the plaintiff, the defendant

was allowed to show that the defendant's treasurer had sent to the plaintiff checks made payable to the plaintiff and signed by the treasurer on behalf of the corporation, with directions that they be applied in payment of the individual account of the treasurer. There was no further evidence as to whether the use of the corporation's funds by the treasurer was proper. The defendant contended that the proceeds of the checks should be applied on the corporation's account with the plaintiff, and not on the treasurer's individual account, but the judge found in substance that the plaintiff was a *bona fide* purchaser of the checks, and therefore that it was not necessary to determine whether or not the corporation authorized the treasurer so to use its funds, and found for the plaintiff without giving the credit the defendant asked for. The defendant excepted. *Held*, that, although the finding and ruling of the judge seemed to be erroneous, the defendant was not harmed thereby, because, there being no declaration in set-off, the finding was on an issue not raised by the pleadings.

LORING, J.   The plaintiff corporation at the times here in question carried on the business of a wholesale grocer, and the defendant corporation kept a restaurant. The plaintiff sold groceries to the defendant from the defendant's organization on September 1, 1908, until July 3, 1909. On May 1, 1909, there was a balance due from the defendant to the plaintiff of $157.04. The treasurer of the plaintiff corporation testified that "this amount was paid by check of defendant for $157.04 on June 1, 1909, which check was sent by defendant to pay this specific amount."

Between May 1, 1909, and July 3, 1909, the plaintiff sold and delivered to the defendant groceries of the value of $243.56, and this action was brought to recover that sum for those goods.

It was admitted that the defendant owed the plaintiff this sum for those goods "unless the facts hereinafter set forth constitute a defense."

"The facts hereinafter set forth" are these: Before September 1, 1908, one Longley had kept the restaurant afterwards kept by the defendant corporation and owed the plaintiff $233.04, for groceries sold by it to him. The defendant corporation was formed to succeed and did succeed to Longley's business and "Longley became its treasurer." On September 23, October 23 and October 30, 1908, Longley sent to the plaintiff checks of the defendant corporation for $81.94, $107.16 and $43.94, with directions to apply them on his individual account, and they were so applied. These checks were signed in behalf of the defendant corporation by Longley as treasurer, and were payable to the

plaintiff corporation. They amounted to $233.04, the sum due from Longley to the plaintiff.

The plaintiff declared on an account annexed and the defendant pleaded a general denial and payment.

At the trial before a judge * sitting without a jury the above facts were agreed to by the parties or testified to by the plaintiff's treasurer. The defendant put in an account (seemingly rendered by the plaintiff in July, 1909), in which the plaintiff stated all sales and payments from the beginning, that is to say, from September 1, 1908, and not merely those which it sought to recover in this action, to wit, those from May 1, 1909, to July 3, 1909. The sales set forth in this account amounted to $1,463.79, and the payments to $1,212.73, making the balance due $251.06. This account did not include the three checks here in question among the payments and did include among the sales one made on July 13, amounting to $7.50, which was not included in the declaration. On this evidence both parties rested.

The defendant asked for twenty-one rulings.† Of these the judge gave the second, third, fifth, eighth, ninth, fourteenth and fifteenth, modified the tenth and eleventh, and refused the first, fourth, sixth, seventh, twelfth, thirteenth, sixteenth, seventeenth, eighteenth, nineteenth, twentieth and twenty-first; and made the following finding:

" I find that the plaintiff, in receiving these checks and applying the same in payment of Charles S. Longley's individual indebtedness, acted in good faith, and that the plaintiff had no knowledge as to the conditions of affairs between said Charles S. Longley and the defendant. There was no evidence showing or tending to show that said Longley acted wrongfully in sending these checks on his own personal account unless said wrongful conduct is to be implied from the form of checks and the fact of the issuance of, and the delivery of the same, in payment of his individual indebtedness.

" The defendant claims that these checks were improperly ap-

---

* *Jenney*, J.

† So much of the substance of these requests for rulings as is material to the decision is given in the statement in the opinion on page 55 as to the effect of the rulings by the trial judge.

plied in payment of said Longley's individual indebtedness, and that it is entitled, under its answer of payment, to have the amount of the same credited to it in this action in part payment for merchandise sold to it on and after the first day of May following the delivery of the checks.

"No evidence was offered except as herein set forth, as to the circumstances attending the drawing of these checks, or as to the financial or other relations of said Longley with the defendant, except that he was its treasurer.

"I find for the plaintiff in the sum of two hundred and forty-three dollars and fifty-six cents ($243.56) with interest from the date of the writ."

The case is here on exceptions taken to the "finding and rulings" and to the "refusal to find and rule."

By adopting the defendant's requests for rulings which he did adopt, the judge in effect ruled that under the circumstances of the present case the plaintiff would have been bound to credit all payments made from the funds of the defendant corporation to the account of the defendant, unless that corporation authorized them to be credited to the treasurer's personal account, had it not been for the question of the plaintiff's being a *bona fide* purchaser for value without notice of the three checks by which these payments were made. And by refusing the requests which he refused, the judge ruled in effect that if the plaintiff was a *bona fide* purchaser for value without notice it was not necessary to come to a decision on the corporation's consent to the money here in question being applied to pay the individual debt of the treasurer. This was followed by his finding that the plaintiff was a *bona fide* purchaser for value without notice of the three checks.

It would seem that the finding made by the judge was an error. The checks in the case at bar being payable directly to the plaintiff would seem to bring the case within *Newburyport* v. *Fidelity Ins. Co.* 197 Mass. 596, *J. G. Brill Co.* v. *Norton & Taunton Street Railway,* 189 Mass. 431, *Freeman's National Bank* v. *Savery,* 127 Mass. 75, and *National Park Bank* v. *German-American Mutual Warehousing & Security Co.* 116 N. Y. 281, and not within *National Bank of Commonwealth* v. *Law,* 127 Mass. 72, *Fillebrown* v. *Hayward,* 190 Mass. 472, and *Feigenspan*

v. *McDonnell*, 201 Mass. 341. The distinction seems to be this: Where the corporation note or other negotiable instrument is payable to the creditor of the individual, the transaction which on the face of the note or other instrument is represented to have taken place is an appropriation of the corporation's money to the payment of the individual's debts and is bad unless shown to be good. Since the transaction is bad unless shown to be good and since the purchaser took with notice (given on the face of the note or other instrument), his rights depend upon the transaction's being or not being in fact what it purports on the face of the note or instrument to be, and no question of a purchase in good faith can arise. See for example *Wilson* v. *Metropolitan Elevated Railway*, 120 N. Y. 145, 150. But on the other hand where the note or other instrument is payable to the treasurer or to a third person and after being indorsed by the payee in blank is used by the treasurer in paying his individual debt, the transaction which on the face of the instrument is represented to have taken place is a payment by the corporation to the treasurer (where the note or other instrument was payable to him), and a payment by the corporation to the third person and another payment by the third person to the treasurer (where the note or other instrument was payable to a third person as stated above). In each of these last two cases the transaction on its face is good unless it is proved to be bad. In that case, if the corporation proves that the application of the note or other instrument of the corporation was a wrongful one, the rights of the creditor depend upon his having acted in good faith. In this connection compare *Freeman's National Bank* v. *Savery*, 127 Mass. 75, and *National Bank of Commonwealth* v. *Law*, 127 Mass. 72.

If the rights of the parties to this action depended upon the plaintiff's right to retain the money received by it on these checks, we should be inclined to hold, for the reasons given above, that the exceptions would have to be sustained. But we are of opinion that this question was not in issue in this case, and consequently that the defendant is not aggrieved by the error of the judge on this point, if there was an error in that connection on his part.

The issues raised by the pleadings in the case at bar were two, and two only, namely: (1) Did the defendant originally owe the

plaintiff for the groceries set forth in the account annexed? and (2) If it did, has it paid for them? At the trial the defendant conceded that the plaintiff was right on the first issue, and relied on the issue of payment alone. Its contention on that issue was that the three checks here in question, sent by the treasurer in September and October, 1908, in payment of his individual debt to the plaintiff, in legal contemplation operated as payment for groceries sold by the plaintiff to the defendant some nine or ten months later, in May, June and July, 1909. The theory on which the defendant has sought to support this contention is that where a payment is made to a creditor to whom debts are due from two persons, the debtor whose money was remitted is the debtor who is entitled to the credit resulting from the payment. That is true where the money remitted as a payment is remitted generally, without directions as to its application. But that doctrine has no application to a case where the payment is accompanied by a direction as to its application. In case money of a corporation is wrongfully remitted in payment of the personal debt of the individual making the remittance and the corporation is in a position to complain of the wrongful use of its money, it can recover back the money so paid. But that wrongful payment is not (in the absence of an agreement to that effect) a payment by the corporation of its debt to the creditor. Of course under such circumstances as we have in the case at bar the creditor and the corporation could agree that the payment should stand as a payment by the corporation, as was done in *Campbell* v. *Mathews*, 6 Wend. 551, relied on by the defendant. But in the absence of such an agreement the wrongful remittance in payment of the personal debt is ground for an action by the corporation to recover the money wrongfully paid to and received by the creditor, but the wrongful remittance cannot operate as a payment by the corporation of its debt to the creditor. And to that effect see *Borden* v. *Sackett*, 113 Mass. 214.

This point has been insisted upon by the plaintiff in this court. It does not directly appear that it was raised at the trial. The fact that the plaintiff excepted to the admission in evidence of the three checks here in question leads us to think that it may have been raised there. But however that may be,

if we should assume that the case was tried in the court below
without reference to the pleadings, and if for that reason we
should sustain the exception to the finding, the case would have
to go back for a new trial on the right of the defendant corpora-
tion to recover in a declaration in set-off which has not yet been
filed.   On the other hand if the case is not sent back for a new
trial the defendant, by bringing a new action, will be in as good
a position as if it should file a declaration in set-off in the case
at bar.   Under these circumstances we are of opinion that the
defendant should be confined in the case at bar to its rights
under the present pleadings.   Under those pleadings the error
made by the judge (if an error was made by him) is on a matter
not in issue, and therefore if an error was made it was an error
by which the defendant was not aggrieved.

*Exceptions overruled.*

*W. V. Taylor*, for the defendant.
*G. A. Gaskill*, for the plaintiff.