[No. 13908.  Department One.  April 30, 1917.]

# NATIONAL CITY BANK, *Appellant*, v. SHELTON ELECTRIC COMPANY, *Respondent*.[1]

BILLS AND NOTES—DEFENSES—FORGERY — DATE OF INSTRUMENT — EVIDENCE.  In an action upon promissory notes made by a corporation, a *prima facie* case is established by evidence to the effect that the persons signing as officers were officers of the corporation at the time the notes bear date, that they were authorized to execute notes for the company, and that their signatures were genuine, in view of Rem. Code, § 3402, providing that the date of a promissory note is deemed *prima facie* to be the true date of its execution; and it then devolves upon the defendant to establish its defense of forgery in that the note was not executed on its date, by clear, cogent, and convincing evidence.

WITNESSES—IMPEACHING TESTIMONY—SUBSTANTIVE EVIDENCE.  In an action on a promissory note, the testimony of a witness in a former suit, introduced for the purpose of contradicting or impeaching his statement that the note was executed on the day of its date, is not substantive evidence of the truth of the matter contained in the contradictory statements.

BILLS AND NOTES—HOLDER IN DUE COURSE—ACTUAL KNOWLEDGE—STATUTES.  Under Rem. Code, § 3447, providing that to constitute notice of a defect in the title of the person negotiating a promissory note, the person to whom it is negotiated must have actual knowledge of the defect, the rights of the holder are to be determined by the simple test of honesty and good faith, and it is not enough that the holder was negligent or omitted precautions dictated by prudence.

SAME—HOLDER IN DUE COURSE—KNOWLEDGE — EVIDENCE — SUFFICIENCY.  Where promissory notes were signed by J. E. W. as an officer of a corporation, and were payable to the J. E. W. Company, an independent corporation to which J. E. W. had lent his name but in which he had no interest at the time, the fact that, after severing his connection with the maker and acquiring an interest in the payee company, he, as an officer of the latter, indorsed the notes, does not preclude the indorsee from claiming as a holder in due course, without knowledge of a defense of want of consideration and *mala fides;* since the notes were not payable to the officer individually, they were not pledged for the officer's individual obligation, and he had ceased to be connected with the maker corporation at the time he indorsed them.

[1]Reported in 164 Pac. 933.

RECEIVERS—ACTIONS—PRESENTATION OF CLAIMS. It is no defense to an action upon promissory notes that the same were not presented to a receiver of the defendant while passing through receivership proceedings, where the defendant did not make a voluntary assignment so as to obtain the benefit of Rem. Code, § 1100, and no notice to creditors was published by the receiver.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered May 19, 1916, upon findings in favor of the defendant, in an action on promissory notes, tried to the court. Reversed.

*Halverstadt & Clarke*, for appellant.

*Frank C. Owings* and *Thos. L. O'Leary*, for respondent.

WEBSTER, J.—The complaint in this case states two causes of action, the basis of each being a promissory note. The two notes are dated February 28, 1912, and March 7, 1912, and are in the amounts of $400 and $150, respectively. Each is signed, "The Shelton Electric Company, by Jos. E. Wickstrom, Prest. Attest: Chas. L. Shotts, Secy.," and is payable "to the order of Joseph E. Wickstrom Company at any bank or trust company, on demand, two years after date." The notes were indorsed: "Joseph E. Wickstrom Co. by W. J. Wickstrom, Pres. and Treas. Jos. E. Wickstrom, Secy." The notes are identical excepting as to their dates and amounts. Plaintiff alleged that, on or about February 16, 1914, it loaned the sum of $500 to the Joseph E. Wickstrom Company, for which that company executed its promissory note in that amount, payable to the order of the plaintiff upon demand, and to secure the payment thereof, pledged as collateral the two notes which are the basis of this action. Upon the maturity of the notes, they were protested for non-payment, and this action was instituted against the defendant company as the maker thereof. Defendant interposed a general denial, and affirmatively pleaded three defenses, to the effect, (1) that the notes were forgeries, in that they do not bear the true dates of their execution, and at the time they

were actually executed, the persons purporting to sign them as such were not officers of the defendant company; (2) that the notes were without consideration; (3) that the defendant company went through a receivership proceeding subsequent to the dates borne by the notes, and that no claim based upon the notes was made to the receiver by any one claiming to own the same. For reply, plaintiff denied the affirmative allegations of the answer, and alleged that it was a holder of the notes in due course, having acquired the same prior to their maturity for value and in good faith. Upon the issues thus framed, the cause was tried to the court without a jury, resulting in a judgment in favor of defendant, from which plaintiff appeals.

We will first notice the affirmative defense of forgery. At the trial, plaintiff offered evidence to the effect that, at the time the notes bear date, Joseph E. Wickstrom was president and Charles L. Shotts was secretary of the defendant company, and that these officers were authorized to conduct all of the business and affairs of that company. It also proved the genuineness of the signatures of Wickstrom and Shotts, as president and secretary, respectively, of the company, and, in anticipation of the defense that the notes were not executed upon the dates they bear, undertook to prove by Joseph E. Wickstrom that the notes were in fact executed upon those dates. On cross-examination, defendant laid the proper foundation for impeaching the witness, and subsequently introduced evidence showing that, during the receivership proceeding through which defendant company passed, he gave certain evidence which tended to contradict his testimony as to the true date of the execution of the notes. It is largely, if not entirely, upon this impeaching evidence that defendant bases its contention that the notes were forged. When plaintiff introduced evidence to the effect that Joseph E. Wickstrom and Charles L. Shotts were president and secretary, respectively, of the defendant company at the time the notes bear date, that they were authorized to execute notes in behalf

of the company, and that their signatures upon the notes were genuine, it established a *prima facie* case overcoming the general denial of the execution of the notes.

Section 3402, Rem. Code, provides:

"Where the instrument or an acceptance or any indorsement thereon is dated, such date is deemed *prima facie* to be the true date of the making, drawing, acceptance or indorsement as the case may be."

It then devolved upon defendant to establish its defense of forgery by evidence that was clear, cogent and convincing; that is, that the dates borne by the notes were not the true dates upon which they were executed, and that, at the time the notes were actually executed, the persons purporting to have signed the same as officers of the corporation were not in fact such officers. It is settled law that no one is presumed to have perpetrated a fraud or committed a crime. Every one is presumed to act honestly until the contrary is established.

Jones, in his Commentaries on Evidence, vol. 1, page 99, § 13, states the rule in the following language:

"But the legal presumption is that men are not guilty of fraud and dishonesty, and more strongly, that they do not commit criminal offenses. This presumption exists no more when a man is on trial for a criminal offense than at any other time, or on the trial of a civil case, when an attempt is made to show that a person has committed a crime. It exists at all times, and everywhere, and is a presumption the law ever makes. Hence every man, however charged with dishonesty or fraud, or a criminal act, is always entitled to have this presumption of the law weighed in his favor, and whoever asserts the contrary, must always encounter it, and be required to overcome it by evidence."

It must also be borne in mind that Joseph E. Wickstrom was not a party to this action and his only connection with it was in the capacity of a witness, so that the rule of admissions or declarations against interest does not apply. It is elementary that the testimony of a witness in a former suit, introduced for the purpose of contradicting or impeach-

ing him as a witness in a subsequent action, is not substantive evidence in the case in which he is testifying. In other words, the impeaching testimony does not establish, or in any way tend to establish, the truth of the matters contained in the contradictory statements. Such testimony must be strictly confined to the object of impeaching the witness. 5 Jones, Evidence, p. 254.

Consequently, giving the impeaching matter full weight and force for the only purpose for which it could properly be considered, its effect would be to destroy the testimony of Wickstrom as to the true date of the execution of the notes, and the presumption that the dates borne by the notes were correct would still remain unshaken and unaffected. Unless the impeaching evidence is to be treated and considered as proof of substantive facts, there is not sufficient evidence in the record to sustain the defense of forgery, and we have grave doubt whether there is sufficient evidence to sustain that defense even though the impeaching testimony should be considered for that purpose.

This brings us to the defense of want of consideration, and while what we have said upon the subject of impeaching evidence being used to establish substantive facts upon which to rest the defense of forgery applies to much of the evidence relied upon as tending to establish lack of consideration, as we view the case it will not be necessary to enter upon a consideration of whether that defense was in fact proven. Assuming.that it was adequately established, its primary effect was to cast upon plaintiff the burden of establishing that it was a holder in due course of the notes in question, and if plaintiff discharged the burden by proving that it was such holder, the defense of want of consideration could not be urged against it. Rem. Code, §§ 3419 and 3450. Therefore, we come directly to the question of whether the plaintiff is a holder in due course of the notes upon which this action is based.

It was established by the evidence that Joseph E. Wickstrom Company was a customer of the plaintiff, and that the notes were taken by it in the usual course of business before maturity, for value, and without actual knowledge of any defect or infirmity in the instruments. If plaintiff is to be denied the rights of a holder in due course, it must be upon the theory that the notes "bear their death wound upon their face," that the bank was thereby put upon inquiry to ascertain their true validity, and the failure to make such inquiry amounted to bad faith. This contention is predicated upon the facts that the notes were executed to plaintiff by Joseph E. Wickstrom, as agent for the Joseph E. Wickstrom Company, that they were payable to the order of the Joseph E. Wickstrom Company, and were signed in the name of the defendant company by Joseph E. Wickstrom as its president. The evidence established, and the lower court found, that plaintiff had no actual knowledge of any infirmities in the instruments; and unless the face of the notes was such as to put plaintiff upon inquiry and its failure to make inquiry in the circumstances amount to *mala fides*, it must be treated as a *bona fide* holder for value. Rem. Code, § 3447, provides that, to constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.

This court, in the case of *Gray v. Boyle*, 55 Wash. 578, 104 Pac. 828, 133 Am. St. 1042, in commenting upon this section, uses this language:

"The rule by which the good faith of a holder of negotiable paper is to be determined is thus stated in Crawford's Annotated Negotiable Instruments Law (3d ed.) p. 68:

" 'The holder is not bound at his peril to be on the alert for circumstances which might possibly excite the suspicion of wary vigilance; he does not owe to the party who puts the paper afloat the duty of active inquiry in order to avert the

imputation of bad faith. The rights of the holder are to be determined by the simple test of honesty and good faith, and not by a speculative issue as to his diligence or negligence. The holder's right cannot be defeated without proof of actual notice of the defect in title or bad faith on his part evidenced by circumstances. Though he may have been negligent in taking the paper and omitted precautions which a prudent man would have taken, nevertheless, unless he acted *mala fide,* his title, according to settled doctrines, will prevail.' "

This rule is fully sustained by the authorities and is the one by which plaintiff's good or bad faith must be measured. Defendant invokes the rule that no person can be a holder in due course of a promissory note, executed by an officer in the name of a corporation and payable to the officer executing it individually, when it is pledged or given in payment of the officer's personal obligation. This rule is elementary and is clearly stated in 3 R. C. L., p. 1085, § 291, in this language:

"Where an officer of a corporation makes its commercial paper payable to his own order, signs it as such officer, and transfers it in payment of an individual debt, it is held that the transferee is not a *bona fide* purchaser thereof without notice, since the facts appearing on the face of the paper are sufficient to put him on inquiry as to its ownership."

The question, therefore, is whether this principle is applicable to the situation presented by the evidence in this case. The notes sued on were executed to Joseph E. Wickstrom Company, and the evidence disclosed that, at the time of their execution, there was an independent corporation *de facto,* or at least a partnership by that name which subsequently became a corporation *de jure,* and was such at the time the notes were negotiated to plaintiff. It was also shown that Joseph E. Wickstrom was not a member of, or in any way connected with, the Joseph E. Wickstrom Company at the time the notes were executed. The evidence tended to prove that, in order to enable the Joseph E. Wickstrom Company to hold certain agencies, Joseph E. Wickstrom permitted the company to use his name as a part of its corporate name.

The notes were not executed by an officer of the corporation in the name of the corporation, payable to the officer executing it as an individual, but were obligations executed in the name of the corporation by its president, to a distinct and independent concern which used as a portion of its corporate or firm name the name of the officer of the maker corporation signing the notes. At the time the notes were negotiated to plaintiff, Joseph E. Wickstrom had acquired some interest in the Joseph E. Wickstrom Company, but had long since ceased to be the president of the defendant company or to have any connection whatsoever with its affairs; so that, at the time the plaintiff acquired the notes, Joseph E. Wickstrom was not an officer of the maker corporation. The notes were indorsed in the name of Joseph E. Wickstrom Company, by W. J. Wickstrom, president and treasurer, and Joseph E. Wickstrom, secretary, and were pledged as collateral security for the payment of a loan, not to Joseph E. Wickstrom individually, but to the Joseph E. Wickstrom Company.

The basic thought upon which the rule under consideration seems to rest is that officers of a corporation cannot lawfully contract with themselves or use the credit of the corporation for their individual benefit, because of the fundamental principle that no person can act as agent of another in making a contract with himself or obtain private advantage at the expense of his principal. In such a situation there can be no meeting of minds, for the reason that there is but one consenting mind to the transaction. Therefore, when it appears upon the face of a paper that it was payable to the individual who had executed it in an official capacity, the obligation is nugatory and, in the language of Lord Denman, "bears its death wound upon its face." This principle, like all legal principles, must be applied by reference to the reason upon which the principle is founded, and it would seem to us that the reason for this rule does not extend to an obligation executed by an officer of the corporation to a wholly distinct and independent corporation or firm, merely because of the

fact that the name of the officer executing it is included in the name of the payee corporation or firm. Upon the face of such an instrument, it appears that there were two consenting minds, one representing the maker, and the other the payee, and the officer is not conducting a business transaction with himself nor is he using the credit of the corporation for private gain. While it is out of the usual course of business and, therefore, suspicious for a corporation, in the name of its president, to execute a promissory note payable to the president in his individual capacity, it is not at all out of the ordinary for it to execute obligations to third persons, and we fail to see how this situation is altered solely because of the fact that the name of the payee concern includes the name of the president of the maker corporation.

This case does not fall within the rule contended for by defendant, (1) because the notes were not payable to the officer individually who executed the notes in the name of the maker; (2) the notes were not pledged as security for the officer's individual obligation; and (3) Joseph E. Wickstrom had long since ceased to be the president of, or in any manner connected with, the maker corporation at the time the notes were indorsed to plaintiff.

In *Jones v. Stoddart*, 8 Idaho 210, 67 Pac. 560, it was held that the fact that a note bore the indorsement of a former president of a corporation who was transferring the same is not notice to the purchaser of any infirmities which may exist, where the party, at the time of the transfer, had ceased to be president, although the transfer was for the individual interest of the former president. We prefer not to rest our decision upon this circumstance alone, but we call attention to the case as shedding light upon the importance to be given to that fact in connection with other circumstances.

There is a rule which we conceive to be applicable to the facts in this case, and it is as well settled as the one upon which defendant relies, viz., that one who takes the negotiable note of a corporation from its president, as collateral security

for a loan to him or to a firm to which he belongs, is not precluded from claiming as a holder in due course by reason of the fact that the note was signed by the president, where it was payable to a third person and indorsed by him. This rule has been recognized by this court in *Spencer v. Alki Point Transp. Co.*, 53 Wash. 77, 101 Pac. 509, 132 Am. St. 1058. See, also, *Cheever v. Pittsburgh, S. & L. E. R. Co.*, 150 N. Y. 59, 44 N. E. 701, 55 Am. St. 646, 34 L. R. A. 69; *In re Troy & Cohoes Shirt Co.*, 136 Fed. 420; affirmed 142 Fed. 1038; *Keyser v. First National Bank*, 78 Fed. 281; *Capital City Brick Co. v. Jackson*, 2 Ga. App. 771, 59 S. E. 92; 8 C. J. § 732, p. 521; 7 R. C. L. § 642.

In the *Cheever* case, *supra*, it appeared that a negotiable note of a corporation was signed by the president and made payable to a third person, the private secretary of the president, who indorsed it to a firm of which the president of the corporation was a member, that it might stand as part collateral security for a loan to that firm. It was held that the person taking the paper was not precluded from claiming as a *bona fide* holder by reason of the fact that the note was signed by the president. The court said:

"The name of the party who presented it and had it in his possession appeared on the face of the paper to have signed it as president. The name of another officer of the corporation was upon it also, attesting its regularity, and everything was in his handwriting, except the signature of the president and the indorsement of the payee. So far as Brooks [the lender] was concerned, the paper showed that it had been issued to a stranger in the regular course of business; and through his indorsement, had come to the hands of a mercantile firm of which the president of the corporation was a member. If this were the fact, there is no doubt as to his right to use it in the business of the firm. The holder of a note, who has no actual knowledge or notice of a defect in the title, or other equities between the parties, when circumstances come to his knowledge sufficient to put him upon inquiry, is chargeable with knowledge of all the facts that such inquiry would have revealed. The difficulty in this case is to

find the circumstance which can be said to be sufficient to put Brooks upon the inquiry. There was absolutely nothing on the face of the paper, except the signature, as president, of the party who was dealing with it, and that, we think, was not sufficient in view of the fact that the appearances were that he was a purchaser from a third party. The principle that applies in a case where an officer of a corporation makes the corporate obligation payable to himself, and then attempts to deal with it for his own benefit, does not aid in solving the question in this case. When paper of that character is presented by the officer or agent of the corporation, it bears upon its face sufficient notice of the incapacity of the officer or agent to issue it."

So in this case, it is difficult to find the circumstance which can be said to be sufficient to put plaintiff upon inquiry. The notes were regular in form, payable to a distinct and independent concern, executed in the name of the maker by the proper officers thereof, bore the seal of the corporation, and were duly and regularly indorsed in the name of the payee by its president, W. J. Wickstrom, and its secretary, Joseph E. Wickstrom. If there was any circumstance sufficient to arouse plaintiff's suspicion, it was the fact that the notes were in the possession of Joseph E. Wickstrom, who had signed the same as president of the defendant company, and this, the cases hold, is not sufficient. *Spencer v. Alki Point Transp. Co., supra.*

If these notes had been made payable to the John Doe Company and had been indorsed by it to the Joseph E. Wickstrom Company, and had been pledged by Joseph E. Wickstrom in the name of that company as security for its obligation, there could be no question under the authorities of the right of the holder, who took the notes before maturity for value and without actual knowledge of infirmities, to recover thereon. The only distinction between the case we have supposed under the decided cases and the actual facts in this case is that the notes were payable to a company carrying as a part of its name the name of the president of the maker.

We are convinced that, under the facts in this case, in the light of the rules herein referred to, the plaintiff was not guilty of bad faith by failing to make inquiry to ascertain the true situation, and is, therefore, not to be affected by the existence of facts which inquiry probably would have disclosed.

We come finally to the defense that the notes were not presented to the receiver while the defendant company was passing through receivership proceedings.  The defendant did not make a voluntary assignment of all of its property for the benefit of its creditors, and consequently Rem. Code, § 1100, can have no application.  The company was placed in the hands of a receiver at the suit of the Kneeland Investment Company, and these proceedings were had long prior to the negotiation of the notes to plaintiff and at a time when they were presumably in the hands of the Joseph E. Wickstrom Company.  That company was not a party to the proceeding. No notice to creditors was published by the receiver, and the defendant did not purchase the property of the corporation at receiver's sale.  Joseph E. Wickstrom, individually, was a party to the proceeding, but at that time was not connected with the Joseph E. Wickstrom Company.  Counsel for defendant cite no authorities, and we know of none, in support of the contention that the failure in these circumstances to present the notes bars recovery thereon.

The judgment of the lower court will be reversed, with direction to enter judgment in favor of plaintiff.

ELLIS, C. J., MORRIS, and MAIN, JJ., concur.