UNION NAT. BANK *v.* BLUFF CITY BANK.*

O. J. GEISLER *et al. v.* SAME.

(*Knoxville.* September Term, 1925.)

1. **BILLS AND NOTES.** Bank held not to be bona-fide holder of notes and certificates of deposit.

Where president of corporation deposited, as collateral to his debt to bank, notes and certificates of deposit payable to corporation, notes being signed and indorsed with corporations' name by himself as president and made payable to himself, and certificates of deposit were indorsed with corporation's name by himself as president, bank *held* not, in view of Uniform Negotiable Instruments Act. section 56, a holder in due course of notes and certificates. (*Post, pp.* 491-493.)

Acts cited and construed: Acts 1899, ch. 94.

Cases cited and approved: Ward v. City Trust Co., 192 N. Y., 61; Ajax Tool Co. v. National Tool Co., 120 Misc. Rep., 603; National City Bank v. Shelton Electric Co., 96 Wash., 81; Redfield v. Wells, 31 Idaho, 418; Walker v. Bank, 91 Okl., 232; Bank v. Fla. Tire & Lbr. Co., 81 Fla., 900; Ice & Storage Co. v. Conner, 61 W. Va., 124; McCullam v. Mermod, etc., Jewelry Co. (Mo. App.), 218 S. W., 345; Wisc. Bank v. Froedtert, 169 Wis., 120; Johnson, etc., Co. v. Longley Luncheon Co., 207 Mass., 52; Kenyon Realty Co. v. Bank, 140 Ky., 133; McDowell v. Bauman, 189 Ky., 136; Bank v. Butler, 113 Tenn., 575.

2. **BILLS AND NOTES.** Purchaser, knowing that seller is dealing with securities of another, is put on notice.

Since a party cannot act for another and for himself in the same transaction, where their interests are antagonistic, where prospec-

---

*Right of one who takes commercial papers of corporation in payment of or security for an individual debt of an officer, see notes in 31 L. R. A. (N. S.) 169; L. R. A. 1918F, 1163.

Union Nat. Bank v. Bluff City Bank.

tive purchaser of negotiable paper has notice that seller is dealing with securities or property of another he is put on notice, and, if he requires property without investigation as to ownership, he does it at his peril. (*Post, pp.* 493-496.)

Cases cited and approved: Ford v. Brown, 114 Tenn., 467; Water Co. v. Bank, 123 Tenn., 364; Nickey Bros. v. Lonsdale Mfg. Co., 149 Tenn., 1.

Cases cited and distinguished; Bank v. Bank, 132 Tenn., 156; Montvale v. People's Bank, 74 N. J. Law, 464.

3. **BILLS AND NOTES.** · Negotiable instrument, payable to bearer, passes title by delivery; delivery of bearer paper rests good title.

A negotiable instrument, payable to bearer, passes title by mere delivery, and vests good title in a holder for value. (*Post, p.* 496.)

4. **JUDGMENT.** Plea of res judicata not supported by record.

Where referee in bankruptcy did not adjudicate, but expressly reserved for decision by state court right to certificates of deposit as between parties, and it was apparent from record that certificates were not in possession of bankrupt, and hence court was without jurisdiction to decree their ownership, chancellor correctly held that plea of *res judicata* was not supported by record. (*Post, pp.* 496, 497.)

5. **TRIAL.** Incompetency of evidence contradicting contract waived by stipulating it to be a fact.

Where bank contended that agreement to hold certificates of deposit in escrow, or evidence thereof, was incompetent because contradicting a written agreement, it waived such incompetency by stipulating it to be a fact. (*Post, pp.* 497, 498.)

ON PETITION TO REHEAR.

6. **BILLS AND NOTES.** On showing that certificates of deposit wrongfully transferred to bank, it had burden to show receipt thereof "in due course."

On showing that corporation wrongfully transferred certificates of deposit to bank, under the Negotiable Instruments Act, section 59,

burden shifted to bank to show it acquired same "in due course," one of the elements of which was value, to meet which it attempted to show certificates were received in payment of valid note, thus presenting issue whether note was valid, and, if not, whether it was a holder thereof in due course. (*Post, pp.* 498, 499.)

Acts cited and construed: Acts 1899, ch. 94.

*Headnotes 1. Bills and Notes, 8 C. J., Section 732; 2. Bills and Notes, 8 C. J., Section 711; 3. Bills and Notes, 8 C. J., Section 566; 4. Judgments, 34 C. J., Section 1317; 5. Stipulations, 36 Cyc., p. 1292; 6. Bills and Notes, 8 C. J., Sections 698, 699, 1292.

## FROM SULLIVAN.

Appeal from and error to the Chancery Court of Sullivan County.—HON. ROBERT M. JONES, Special Judge sitting by agreement of all parties.

FRANTZ, McCONNELL & SEYMOUR and ST. JOHN & GORE, for Union Nat. Bank.

W. D. LYON, for Bluff City Bank.

WEBB, BAKER & EGERTON, for A. J. Geisler and B. R. Sams.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

These two causes were consolidated and heard together. In the first cause the Union National Bank, by its bill, sought a recovery against the Bluff City Bank on a

number of certificates of deposit, aggregating $4,251.25, together with interest, issued by the latter bank to Rogers & Co., a now bankrupt corporation.

In the second cause Geisler, and a number of parties similarly situated, alleged, in substance, that Rogers & Co., in the fall of 1921, were operating a chain of stores in Knoxville and East Tennessee, also a wholesale grocery in Knoxville, and that, through its agents, it procured complainants to subscribe to its stock upon agreement that it would erect and operate a packing plant in Bluff City, it being further agreed that complainants' subscription to such stock was not to be binding, and their money and notes were to be returned in the event the project was abandoned; that the cash paid and notes executed by complainants were subsequently converted into the certificates of deposit involved herein, with the express agreement and understanding that they were to be held in escrow until the erection of the plant was begun; that the project was abandoned, and in March, 1922, a petition to adjudge Rogers & Co. a bankrupt was filed in the federal district court; and that subsequently it was adjudged a bankrupt.

In a stipulation of facts, upon which these causes were tried, the foregoing allegations are admitted to be true.

It further appears, without controversy, that on October 1, 1921, Charles F. Rogers individually owed the Union National Bank a note for $15,000, which was then due. He paid $5,000 of this indebtedness in cash, and executed his individual note for $10,000, payable March 22, 1922, and attached to said latter note as collateral security two notes for $5,000 each, dated June 22, 1921, and payable in six and nine months, respectively, said

notes being signed, ''Rogers & Company, by Charles F. Rogers, Pres.,'' and payable to ''Charles F. Rogers.''

On December 28, 1921, Charles F. Rogers paid said first $5,000 note by transferring said certificates of deposit, which he indorsed, ''Rogers & Company, by Charles F. Rogers, Pres.''

In the memorandum opinion filed on November 1, 1924, in the case of *Earnest Kellar, Trustee, v. Palace Grocery Company,* Knox equity, which opinion is made a part of the record herein by stipulation, this court reviewed the circumstances under which Rogers, as president of the company, executed said two $5,000 notes to himself, and held that same were unauthorized and a fraud on the company.

It is also conceded that he negotiated said certificates of deposit to the Union National Bank without authority, and in payment of the notes which he had fraudulently executed in the name of the company.

In the Geisler bill all the foregoing facts are alleged, and it is charged that these transactions were illegal; that the bank was not a holder in due course of said first $5,000 note, and of the certificates of deposit negotiated to the bank in payment thereof, and, further, that they are entitled to have said certificates canceled and returned to the Bluff City Bank for their use and benefit.

The principal question in the causes, and upon which counsel seem to have waged their battle, was whether the Union National Bank was a holder of said certificates of deposit in due course and for value? And it is evident that a determination of this question depends upon whether it was a holder in due course for value of

said first $5,000 note, to pay which these certificates were negotiated?

The learned chancellor held in the first suit that the bank was a holder of said note and said certificates of deposit in due course and for value, and, having so held, he dismissed the second suit, although he found as a fact that the agreement was that said certificates of deposit were to be held in escrow, and became effective only upon the erection of said packing plant.

A decree was entered in favor of the Union National Bank for the face value of said certificates of deposit, together with protest fees and interest.

Geisler and associates perfected an appeal to this court, and assign for error the action of the chancellor in decreeing that the Union National Bank was a holder of said note and said certificates of deposit in due course and for value.

The Union National Bank filed the record for a writ of error, and insist that the chancellor erred in overruling their plea of *res judicata,* and in not excluding certain testimony and facts. These matters will be referred to more in detail later on in this opinion.

Section 56 of the Uniform Negotiable Instruments Act (Laws 1899, chapter 94) is as follows: "To constitute notice of an infirmity in the instrument, or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith."

1. Upon an examination we find that the authorities are practically unanimous in holding that a purchaser

is charged with notice where a corporate note or check is drawn by one of the corporation officers to his own order, and transferred for his personal benefit. 8 Corpus Juris, 521; 3 Ruling Case Law, 1085; Fletcher's Cyc. of Cor., vol. 3, pp. 3122 to 3124; Id. vol. 10, 1921 Supplement, 333; Thompson on Corporations (2d Ed.), vol. 2, section 1700; Cook on Corporations (6th Ed.), section 293; Uniform Laws, vol. 5, p. 252; Daniel on Negotiable Instruments (6th Ed.), sections 396-795; Crawford's Anno. Neg. Inst. Law, section 95; Joyce on Defences to Commercial Paper, vol. 2, pp. 704, 705.

In the notes to the above texts will be found many cases, too numerous to be incorporated in this opinion, and no cases to the contrary are cited.

It is said by counsel for the bank that many of said cases make no reference to the Uniform Negotiable Instruments Act, but we find a number of cases that either refer to same directly, or were decided in states which had adopted the Uniform Act, some of which are the following: In *Ward* v. *City Trust Co.*, 192 N. Y., 61, 84 N. E., 585; *Ajax Tool Co.* v. *National Tool Co.*, 120 Misc. Rep., 603, 199 N. Y. S., 163; *National City Bank* v. *Shelton Electric Co.*, 96 Wash., 81, 164 P., 933; *Redfield* v. *Wells*, 31 Idaho, 418, 173 P., 640; *Walker* v. *Bank*, 91 Okla., 232, 216 P., 928; *Bank* v. *Florida Tire & Lumber Co.*, 81 Fla., 900, 89 So., 139; *Ice & Storage Co.* v. *Conner*, 61 W. Va., 124, 55 S. E., 982; *McCullam* v. *Mermod, etc., Jewelry Co.* (Mo. App.), 218 S. W., 345; *Wisconsin Bank* v. *Froedtert*, 169 Wis., 120, 170 N. W., 822; *Johnson, etc., Co.* v. *Longley Luncheon Co.*, 207 Mass., 52, 92 N. E., 1035; *Kenyon Realty Co.* v. *Bank*, 140 Ky., 133, 130

S. W., 965, 31 L. R. A. (N. S.), 169; *McDowell* v. *Bauman,* 189 Ky., 136, 224 S. W., 641.

We have been unable to find a single case where any court of last resort departed from this rule. The reason for the failure of many courts to refer to the Uniform Act, in announcing the rule, is obvious, and that reason is that in most of the states this rule had been adopted independently of the Uniform Negotiable Instruments Act, and, as pointed out in *Bank* v. *Butler,* 113 Tenn., 575, 83 S. W., 655, the only effect of section 56 of the act was to change the minority rule of constructive or implied notice (prevailing in Tennessee and a few other States) to the majority rule.

The reason for the rule is apparent, viz. that a party cannot act for another and for himself in the same transaction where their interests are antagonistic. In other words, where a prospective purchaser of negotiable paper has notice that the seller is dealing with securities or property of another, he is put upon notice, and, if he acquires the property without an investigation as to the ownership, he does so at his peril.

This principle was recognized by this court in *Ford* v. *Brown,* 114 Tenn., 467, 88 S. W., 1036, 1 L. R. A. (N. S.), 188, and *Water Co.* v. *Bank,* 123 Tenn., 364, 131 S. W., 447.

And in *Bank* v. *Bank,* 132 Tenn., 156, 177 S. W., 75, it was said: "Among the powers ordinarily inhering in the office or position of cashier is that of issuing and signing drafts drawn on funds of his bank on deposit with a correspondent bank. 1 Morse, Banks and Banking, section 154; 1 Michie, Banks and Banking, section 102, p. 710.

"By way of exception to this rule of law, a cashier, as such, has no implied power to draw such drafts in his own favor, or in favor of a creditor in payment of his own debts; and a person who accepts a draft, drawn by a cashier, payable to himself, or used in payment of the individual indebtedness of himself, is put on notice that the fiduciary is discharging his own obligation with the funds of his principal, the bank, and the recipient is not to be treated as an innocent holder of the draft or its money product, and may be called to account for the proceeds by the bank. As Lord Denman observed of commercial paper so drawn: 'It bears its death wound on its face.' The duty of the recipient is to make inquiry to ascertain whether, there being a lack of inherent power, there existed authority on the part of the cashier from his corporate principal, by way of special or express grant, or by way of implication from a course of like conduct for a long time acquiesced in by the bank."

We are therefore of the opinion that the chancellor was clearly in error in holding that the Union National Bank was a holder in due course of said note and said certificates of deposit.

But it is said by counsel for the Union National Bank that this court, in the recent case of *Nickey Bros.* v. *Lonsdale Manufacturing Company,* 149 Tenn., 1, announced a contrary rule. In that case Stone negotiated certain bonds to the complainant bank to secure his individual indebtedness, which he, as president of the company, had executed. The company had authorized him to issue and sell these bonds, and they were payable to bearer This court held that the bank was a holder in due course, and cited in support of its decision the case of *Montvale*

v. *People's Bank,* 74 N. J. Law, 464, 67 A., 67, a case similar in its facts, in which the court said:

"It is suggested that, although the bank had no knowledge of any lack of authority on the part of Crotty to dispose of the bonds, the fact that he signed them as mayor charged it with notice of the defect in his title within the meaning of the fifty-second section of the statute. But it is provided by the fifty-sixth section of the act that 'to constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiable must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.' Knowledge on the part of the bank that the person to whom they made the loan was the mayor of the borough, if it had such knowledge, affords no ground for holding that its action in taking the bonds amounted to bad faith. Notwithstanding that Crotty executed them in his official capacity, he had as complete a right as any other citizen of the borough, or any member of the public at large, to become a purchaser of its securities, and the fact that he assumed to deal with them as his own in his transaction with the bank, instead of being notice to it that he was betraying the trust reposed in him by the municipality and was fraudulently putting upon the market securities which had not been issued by it, justified the bank in believing that he was in fact just what he represented himself to be by his conduct, namely, the owner of the securities. The bank is therefore the holder in due course of the bonds in suit, as such holder is defined by the statute."

In the bond case the bank had no notice that the bonds were the property of the company, but, being payable the bearer, had a right to infer that Stone owned them.

A negotiable instrument, payable to bearer, passes title by mere delivery, and vests good title in a holder for value. *Bank* v. *Butler,* supra, and cases cited.

The government of the United States, by A. W. Mellon, Secretary of the Treasury, issues federal reserve notes, in various denominations, payable to bearer. Could it be questioned that, should Mr. Mellon present one of these notes to a merchant, before accepting same, he would have to inquire of the United States as to whether Mr. Mellon was the owner of such note? This instance is analogous to the negotiation of the bonds by Stone. The bank was not charged with notice that Stone was negotiating the company's property. In the instant causes the bank was charged with notice that Rogers was appropriating the company's property. The distinction is one of notice as to ownership.

2. We are further of the opinion that the chancellor correctly held that the plea of *res judicata,* interposed by the Union National Bank to the bill of Geisler, was not supported by the record.

The substance of that plea was that, in the bankruptcy proceeding, referred to herein, the matters here involved were adjudicated. But it appears from the decree of the referee that these matters were reserved. The referee did decree that the Union National Bank had sustained its claim as to the second $5,000 note against the bankrupt, and also that, as between the bank and the bankrupt, the former was entitled to the certificates of deposit, but he did not adjudicate, but expressly re-

served for decision by the State court, the right to these certificates as between the bank and Geisler and others. In fact, it appears from the record that these certificates were not in the possession of the bankrupt and hence the district court was without jurisdiction to decree their ownership. From the incomplete record of the proceedings in the bankruptcy court appearing in these records it is quite evident to our mind that the referee did not undertake to decide, as between the parties to the present suits, the merits of the questions here involved, but expressly reserved same for decision by the State court.

3. We also concur with the chancellor in holding that Rogers & Co. agreed to hold these certificates in escrow until the construction of the plant was begun, otherwise to return same.

For the Union National Bank it is contended that the fact of such agreement or the evidence thereof, is incompetent, because contradictory of the written agreement (stock subscriptions).

Conceding this to be true, the bank has waived its incompetency by stipulating it to be a fact. The bank cannot agree to try the causes on certain facts, and then upon the hearing except to such facts because evidence supporting same would be incompetent.

But, if we are in error in this, we are unable to see how the bank would suffer, in view of our holding that it cannot recover on the certificates.

Upon the whole record, we feel constrained to reverse the the chancellor, to dismiss the original bill of the Union National Bank, and to grant to the complainants in the Geisler suit the relief prayed for in their bill.

152 Tenn.—32.

The Union National Bank will be taxed with all the costs of the causes.

### ON PETITION TO REHEAR.

It is said that Geisler and others cannot attack the validity of the $5,000 note, to pay which the certificates of deposit, here involved, were negotiated to the Union National Bank, but that same could only be questioned by Rogers & Co.

This question was not dealt with in the original opinion, except incidentally in dealing with the defense of *res adjudicata,* and for the reason that the court interpreted the following excerpt in the brief of counsel for the Union National Bank to waive same, to-wit: "The only question for the consideration of the court is whether or not the Union National Bank had notice of any infirmity or defect in the note at the time it took it."

Upon that statement this court carefully considered all of the authorities bearing upon the question, and announced its conclusion in the original opinion.

Section 59 of the Negotiable Instruments Act (chapter 94, Acts of 1899) provides as follows: "Every holder is deemed *prima-facie* to be a holder in due course, but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he, or some person, under whom he claims acquired the title as a holder in due course."

Upon it being made to appear that Rogers & Co. wrongfully transferred these certificates of deposit to the bank, the burden shifted to the bank to show that it acquired same in due course, one of the elements of which is "value." It undertook to meet this burden by showing that these certificates were received in payment of

a valid $5,000 note, which it held against Rogers & Co. In this way the issue was presented as to whether this was a valid note, and, if not, whether the bank was a holder thereof in due course?

In our original opinion we held that the note was void, and that the bank was not a holder in due course.

Thus it appears that it was the complainant bank that raised the issue as to the validity of this note.

We have carefully considered all the questions raised in the petition to rehear, the one referred to above being the only one which presents any matter that was not considered upon the original hearing, and find them all without merit, and therefore dismiss the petition to rehear.