## MARYLAND CASUALTY CO. v. CITY NAT. BANK.

## CITY NAT. BANK v. MARYLAND CASUALTY CO.

Circuit Court of Appeals, Sixth Circuit.
December 13, 1928.

Nos. 5015, 5016.

J. H. Anderson, of Knoxville, Tenn. (Anderson & Word, of Knoxville, Tenn., on the brief), for Maryland Casualty Co.

John W. Green and J. A. Fowler, both of Knoxville, Tenn. (Green, Webb & Bass, Lindsay, Young & Young, Fowler & Fowler, John K. Shields, and Robert S. Young, all of Knoxville, Tenn., on the brief), for City Nat. Bank.

Before DENISON, MOORMAN, and KNAPPEN, Circuit Judges.

MOORMAN, Circuit Judge. J. Parnick Smith was trustee of Knox county, Tennessee, from September 1, 1922, to September 1, 1926. He was the custodian, as such trustee, of certain county funds, and he maintained two deposit accounts in the City National Bank of Knoxville—a personal account and one as trustee. In his personal account he deposited his salary as trustee and the income he received from a mercantile business which he operated in Knoxville. The

county funds were deposited in the trustee account. Between May 31, 1923, and May 29, 1925, he drew seven checks, amounting to more than $38,000, upon his trustee account, and deposited them in his personal account. During that time he paid several thousands of dollars of personal debts to the bank from this personal account. At the expiration of his term of office he was more than $80,000 short in his accounts with the county. Included in this shortage were the funds that he had transferred to the personal account. The bank did not know that these funds were being misappropriated, unless it was bound to take notice thereof from the transfer of the funds and the payments of Smith's debts. The Maryland Casualty Company, surety on Smith's bond, made good the shortage, and brought this suit against the bank to recover the amount misappropriated through the personal account.

The theory of the suit was that the bank had intentionally aided Smith in misappropriating the funds. The trial court permitted a recovery upon that theory, but limited it to the amount that the bank had received. The Casualty Company contends that there should have been a recovery of the $38,000, or, if not all of it, certainly that part of it which was misappropriated after the first transfer was made. Its contentions are: (1) That the drawing of a check on the trustee account and the depositing of it in the personal account was a conversion, in which the bank intentionally aided; and (2) even if that act was not of itself a conversion, when the bank accepted the first check on this account for a debt due from Smith, it then had notice of Smith's intention and purpose to misappropriate the funds, and became liable, not only for what it received, but also for any funds thereafter transferred and misappropriated.

■ There are cases which seem to support the first of these contentions, but those cases are in the minority, and the better reasoned cases hold that, in the absence of a statute making it so, the drawing of a check in due form upon a trust fund and the depositing of it in the same bank to the personal credit of the trustee is neither a conversion or misappropriation of the fund nor notice to the bank of any such purpose.[1] Under these au-

thorities it cannot be held that the bank aided in the misappropriation by merely accepting for deposit in the personal account checks drawn on the trustee account. And this, notwithstanding United States Fidelity & Guaranty Co. v. People's Bank, 127 Tenn. 720, 157 S. W. 414. There is no statute in Tennessee, so far as we are informed, making the deposit of a trust fund to the personal account of the trustee a misappropriation or notice of an intended misappropriation; and, in view of American Surety Co. v. Grace, 151 Tenn. 575, 271 S. W. 739, we cannot say that the ruling in the People's Bank Case is the settled law of the state. If it were, we should feel compelled, on this question of general law, to follow what we think is the correct rule.

■ A consequent of the rules that we have referred to is that, where trust funds are commingled with private funds in a personal account, the bank is not bound by its knowledge of that fact to look to the manner of their disbursement. Hence the payments made to the bank were not notice to it of Smith's intention to misappropriate the trust funds. The main authority upon which the casualty company relies in opposition to this view is Bischoff, Adm'r, v. Yorkville Bank, 218 N. Y. 106, 112 N. E. 759, L. R. A. 1916F, 1059. That case, we think, is distinguishable on its facts. When the executor in that case paid the note due the bank, his personal account was composed entirely of trust funds, and it could not be supposed that he had any personal interest in the fund, or that he was reimbursing himself for what he had expended on behalf of the estate. Smith's personal account was more complicated; he deposited many thousands of dollars of his own money in it; sometimes he drew cash from the trust account to pay salaries and office expenses; and, so far as the bank knew, he sometimes used his private funds for that purpose, and paid himself back from the trust funds. These differing circumstances gave to the two acts of paying the bank a different color and significance; and, while we are not to be understood as approving the ruling in the Yorkville Case on the facts there considered, nevertheless there is such difference in the circumstances of the two cases that, if we thought the deci-

[1] National Bank v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693; City of Helena v. National Bank, 173 Ark. 197, 292 S. W. 140; Havana Central R. Co. v. Central Trust Co. (C. C. A. 2) 204 F. 546, L. R. A. 1915B, 715; Southern Trust & Commerce Bank v. San Diego Savings Bank, 60 Cal. App. 215, 212 P. 385; Goodwin's Adm'r v. American National Bank, 48 Conn. 550; Allen v. Fourth National Bank, 224 Mass. 239, 112 N. E. 650; Kendall v. Fidelity Trust Co., 230 Mass. 238, 119 N. E. 861; Munnerlyn, Trustee, v. Augusta Savings Bank, 88 Ga. 333, 14 S. E. 554, 30 Am. St. Rep. 159; Whiting v. Hudson Trust Co., 234 N. Y. 394, 138 N. E. 33, 25 A. L. R. 1470.

sion in that case correct, we should still feel that the payments in this case were not notice of an intention to divert the funds.

■ While the bill in this case proceeds upon the theory that the bank intentionally aided in the misapplication of the funds, it is sufficient, both in the facts stated and the relief sought, to sustain a recovery of such funds as can be traced into the hands of the bank. Preliminarily, however, to a discussion of that question, we must consider the contentions of the bank. The first is that the casualty company, as subrogee of the county, could not maintain an action against the bank until there had been a determination of Smith's liability in a proceeding by the county to surcharge the settlements which he made with it. There would be much force in this contention if there were any controversy as to the fact and amount of Smith's shortage. There is none. The shortage was not discovered until after the settlements were made, and the amount of it is not denied. The county would have the right, in those circumstances, without seeking to surcharge the settlements, to sue the bank either for wrongfully aiding in the misappropriation or for such of its funds as it could trace to the possession of the bank. The casualty company, having paid the shortage, is entitled to subrogation to that right. Fidelity & Guaranty Co. v. Union Bank & Trust Co., 228 F. 448 (6 C. C. A.).

■■ Nor do we find any basis for estoppel in the circumstance that the commissioners of the county made periodical reports on Smith's accounts upon which these settlements were made. The reports, as well as the settlements, were accepted and approved by the county because of Smith's fraudulent misrepresentation. Furthermore, the proofs do not show that the bank either relied upon or was prejudiced by the county's action.

It is said for the bank that, under the Negotiable Instruments Act of Tennessee (Acts 1899, c. 94), its title to the funds is complete. The cited cases from Tennessee do not so hold, Shuttle Co. v. National Bank, 134 Tenn. 379, 183 S. W. 1006, and Union National Bank v. City Bank, 152 Tenn. 486, 279 S. W. 797; and we have been referred to no decision in other states giving that effect to such an act as against a cestui que trust who has traced his fund. The diversion occurred within the bank, which made no new advance, nor extended any new credit, in connection with it. The bank was not a purchaser for value, and it ought not to be permitted to keep the money as against the real owner. Wilson v. Smith, 3 How. (44 U. S.) 763, 11 L. Ed. 820; Warner v. Martin, 11 How. (52 U. S.) 209, 13 L. Ed. 667; United States v. Bank, 96 U. S. 30, 24 L. Ed. 647.

■ There can be no doubt of the right of the casualty company to recover such trust funds as it can trace into the hands of the bank. Surety Co. v. Carroll County (C. C. A.) 194 F. 593; Brennan v. Tillinghast (6 C. C. A.) 201 F. 609; Peters v. Bain, 133 U. S. 670, 10 S. Ct. 354, 33 L. Ed. 696. The theory on which such a recovery is permitted is not that the bank knowingly or wrongfully aided in the misapplication, but, as said in the Union Bank & Trust Co. Case, that "it has no equity equal to that of the real owner." To trace trust funds that have been commingled with personal funds in a personal account is often difficult. The law presumes, in that situation, that the drawer of a check for a personal obligation against the account intends to make payment out of his own money, and not to infringe upon the trust money until his own money is gone. Brennan v. Tillinghast, supra. And when a trust fund has once been dissipated or reduced, subsequent deposits of personal funds, made in the due course of business, without any specific intention to restore the trust fund, are not to be applied to such restoration, but the dissipation of that fund continues as before. Board of Com'rs v. Strawn (6 C. C. A.) 157 F. 49, 15 L. R. A. (N. S.) 1100; In re Brown (C. C. A.) 193 F. 24, affirmed in 226 U. S. 110, 33 S. Ct. 78, 57 L. Ed. 145; Schuyler v. Littlefield, 232 U. S. 707, 34 S. Ct. 466, 58 L. Ed. 806. Hence, when trust money has been deposited in a joint account, and it must be determined how much of it remains on a given date, the minimum balance existing between that date and the date of deposit is the amount remaining and identifiable as a trust fund. The record before us does not permit an exact determination, under this method, of what trust funds were included in the payments to the bank. The plaintiff put in evidence ledger sheets showing continuously the personal account from September 1, 1922, to January, 1927. This exhibit presumably contains the necessary data. It is not in the record. There was substituted for it a summary, which omits most of the vital figures, but retains enough to indicate that some of the funds were paid to the bank.

In order that the exact amount may be ascertained, the decree is reversed, and the cause remanded for a decree consistent with this opinion.

KNAPPEN, Circuit Judge. While not formally dissenting from the decision of the majority, I am not convinced that, on the facts of this case, and as between the subrogee of the rights in the trust fund on the one hand and the bank on the other, the moneys (even prima facie personal) deposited by Smith in an account, partaking at least in part of a trust character, may not be considered as intended to restore the trust funds improperly drawn out. However, a large part of the deposits in this account were by way of checks drawn on the trustee account. Recovery against the bank, if permitted, will be on the theory that it has received from funds which are, at the very least, prima facie joint funds of the trust and of Smith personally, which the bank took at the peril of having to repay if, and to the extent that, the trust fund was thereby depleted. United States Fidelity Co. v. Union Bank, etc. (C. C. A. 6) 228 F. at page 451. The proofs show that available funds fell short of discharging Smith's official liability, and in a large amount. I think, also, that, under the facts of this case, the bank carries the burden of showing that it in fact took only Smith's personal funds. This would seem to result, not alone from the prima facie situation referred to, but also from the peculiarly better means of information upon the subject presumably possessed by the bank, which could and should have known of the trust condition. Under the facts before us, the bank would not be justified in receiving from the fund payment of its private debt, unless it knew that it was in fact taking only Smith's personal funds. Cf. Brennan v. Tillinghast (C. C. A. 6) 201 F. at pages 613–615; United States Fidelity Co. v. Union Bank, etc., supra.