HAVANA CENT. R. CO. v. CENTRAL TRUST CO. OF NEW YORK.

(Circuit Court of Appeals, Second Circuit. March 31, 1913.)

No. 158.

1. CORPORATIONS (§ 423*)—OFFICERS—BREACHES OF TRUST.

Rules for following trust funds apply for the protection of corporations against breaches of trust by their officers.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1692–1695; Dec. Dig. § 423.*]

2. CORPORATIONS (§ 430*)—OFFICERS—MISUSE OF CORPORATE FUNDS.

One who receives from an officer of a corporation corporate obligations for his individual use, drawn by himself in his own favor, or who receives from such an officer money or securities of the corporation in payment of the officer's personal debts, does so at his peril, and is put on inquiry to determine whether the officer had authority to make such use of the corporation's property.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1740, 1741; Dec. Dig. § 430.*]

3. BANKS AND BANKING (§ 138*)—DEPOSITS—RELATION OF BANK WITH CORPORATE DEPOSITOR.

A bank in which corporate funds are deposited is not a trustee, quasi trustee, factor, or agent of the corporation, but its debtor only, and, though the bank is bound to satisfy itself that the officer of the corporation signing checks is authorized to do so, it is not the corporation's agent to determine whether a check drawn conforms to the contract between them, but determines the question at its peril.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 398–405; Dec. Dig. § 138.*]

4. CORPORATIONS (§ 430*)—CORPORATE DEPOSITS—MISUSE BY CORPORATE OFFICERS—DUTY TO INQUIRE.

The treasurer of a corporation having an active deposit account in defendant bank drew checks against the deposit, signed by himself as treasurer, payable to himself or another, and, having indorsed them, deposited them to his individual account in another trust company, which presented them to defendant, which paid them without question. The treasurer had no right to the checks, and his action in drawing them amounted to a criminal appropriation of the corporation's funds. So far as defendant was concerned, however, there was nothing suspicious about the checks, except that they were drawn by the corporation's general fiscal officer to his own order and indorsed by him, and other similar checks had been drawn and paid before, and defendant had no knowledge that the checks were being used for the treasurer's personal

benefit. *Held*, that defendant was not charged with notice, from the mere fact that the checks were drawn to the treasurer's own order, that they were being improperly used, and hence was not liable to repay the amount to the corporation.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1740, 1741; Dec. Dig. § 430.*]

5. CORPORATIONS (§ 430*)—CORPORATION DEPOSITOR—MISUSE OF FUNDS BY CORPORATION OFFICER—BANK'S LIABILITY.

Where a bank has knowledge that an officer of a corporation depositor is using a check on the corporation's funds for his personal benefit, e. g., to pay his own debt to the bank, or to deposit it to his personal credit, the bank is then put on inquiry, and, if it fails to make it, pays at its peril, not because it is agent of the corporation, but because the bank cannot discharge its debt to its depositor, except on the depositor's authorized order.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1740, 1741; Dec. Dig. § 430.*]

6. CORPORATIONS (§ 429*)—BY-LAWS—NOTICE.

While a bank in which a corporation had a deposit account is charged with notice of the provisions of the corporation's charter with reference to the authority of its officers to withdraw moneys, it is not charged with notice of a by-law requiring a counter-signature on all checks drawn against the corporation's deposit account, not brought to the bank's notice by the corporation; especially where for a considerable period checks had been issued, and paid without question, bearing only the signature of the corporation's general fiscal officer.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1720–1723, 1725; Dec. Dig. § 429.*]

In Error to the District Court of the United States for the Southern District of New York; Julius M. Mayer, Judge.

Action by the Havana Central Railroad Company against the Central Trust Company of New York. From a judgment in favor of defendant on the verdict, plaintiff brings error. Affirmed.

The following is an outline of the facts particularly relevant to the principal questions of law discussed in the opinion:

On February 23, 1906, C. W. Van Voorhis, treasurer of the plaintiff, the Havana Central Railroad Company, opened a deposit account in its name with the defendant, the Central Trust Company. The account became active, further deposits were made and checks were drawn upon it signed "Havana Central Railroad Company, C. W. Van Voorhis, Treas." Among the checks so drawn and signed were three upon which this action is based. These checks were for $26,461.81, $21,944.55 and $15,000, respectively and were payable to W. M. Greenwood or C. W. Van Voorhis. They were indorsed by said Van Voorhis and not by said Greenwood; were deposited in the individual account of the former in the Knickerbocker Trust Company; were presented by that Company to the defendant and were paid by it. Said Van Voorhis had no right to such checks and his acts in drawing them amounted to a criminal misappropriation of funds. The action was based upon an alleged breach of duty upon the part of the defendant in paying the checks.

Heyn & Covington, of New York City (G. B. Covington, of New York City, of counsel), for plaintiff in error.

Joline, Larkin & Rathbone, of New York City (L. H. Freedman and A. Stickney, both of New York City, of counsel), for defendant in error.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Before LACOMBE, WARD, and NOYES, Circuit Judges.

NOYES, Circuit Judge (after stating the facts as above). Upon the trial the plaintiff claimed that the form, face and contents of the checks were, as a matter of law, such as to put the defendant upon inquiry. The trial court ruled that the question was one of fact for the jury and the assignment of error based upon this ruling brings up the primary question in the case; a question which, as affecting the duties of banking institutions, is of far-reaching importance.

[1, 2] The rules for following trust funds apply for the protection of corporations from the breaches of trust of their officers and these rules have heretofore been carried to their fullest extent by the courts of the state of New York. It has been said that one receives at his peril from an officer of a corporation the securities of such corporation in payment of his personal debts. And it has likewise been established that where a person receives from such an officer for his individual use corporate obligations drawn by himself in his own favor, such person is put upon inquiry to determine whether the officer has the right to so use such obligations. Ward v. City Trust Company, 192 N. Y. 61, 84 N. E. 585; Squire v. Ordemann, 194 N. Y. 394, 87 N. E. 435; also the very late case of Niagara Woolen Co. v. Pacific Bank, 141 App. Div. 265, 126 N. Y. Supp. 890. Moreover, upon the facts in this very case, the Appellate Division for the First Department held that the Knickerbocker Trust Company which, as shown in the statement of facts, received and collected the checks in question was bound to account for their proceeds. The court said that the checks on their face charged the Knickerbocker Company with knowledge that the treasurer of the plaintiff corporation was converting its money to his own use because they were drawn to his order and deposited to his credit; that having been put upon inquiry and having failed to make it, the Knickerbocker Company was liable (Havana Central R. Co. v. Knickerbocker Trust Company, 135 App. Div. 313, 119 N. Y. Supp. 1035). Upon the appeal in the Knickerbocker Case, 198 N. Y. 422, 92 N. E. 12, however, the Court of Appeals approached the subject from a different point of view and—as we construe its decision—materially altered the underlying rules. The court assumed that the Knickerbocker Company was put upon inquiry by the checks and their deposit, but said that it was not bound to look beyond the bank upon which they were drawn—the defendant in this case; that the defendant was the agent of the plaintiff "to make representations to third persons as to the validity of checks drawn upon the plaintiff's account"; that the defendant as agent might be liable to the plaintiff as depositor for its mistakes, but that the plaintiff was estopped to charge the intermediate holder after its agent by paying the checks had represented that they were "all right."

It is impossible to give the decision of the Court of Appeals a narrow interpretation. It was based upon the assumption that the Knickerbocker Company was put upon inquiry because the checks were drawn by the treasurer to his own order and were deposited to his personal credit. The inquiry involved two questions:

(1) The authority of the treasurer to draw checks of that kind.

(2) His authority to draw these checks and use them for his own purposes.

An answer to the first question would not have relieved the holder put upon inquiry. The defendant might well have answered that the treasurer was authorized to draw checks to his own order provided they were to be used for corporate purposes. The question would have remained whether he was authorized to use these checks for his personal benefit and unless the defendant was the agent of the plaintiff to make representations as to the validity of the checks in this respect, it was not—in the language of the opinion referred to—"the agent of the Havana Central Railroad Company to determine whether the checks in controversy were properly payable or not." We think it clear that the decision holds that a banking institution is the agent of its depositors to make representations to holders of corporate checks drawn upon it whether such checks are "all right," i. e., whether in respect of matters concerning which a holder is reasonably put upon inquiry, they are valid instruments properly payable.

Manifestly, the decision curtails in marked degree the doctrine of following trust funds as applied in favor of corporations in the case of breaches of trust by their officers. In the absence of bad faith a bank which takes for deposit to the personal credit of an officer of a corporation a corporate check drawn by such officer to his own order and which, on account of such circumstance, is put upon inquiry, has —it is held—only to present it to the bank upon which it is drawn, and if it is paid, then the former bank is relieved of responsibility to the corporation. But as it would not be liable at all if the check were not paid, it is difficult to see under what conditions it would be responsible.

If, then, we accept the decision referred to, we must carry the principles involved to their legitimate conclusion. If a bank of deposit be the depositor's agent to make representations as to the validity of his checks to third persons who are put upon inquiry and to relieve thereby such persons from doing more than to present them for payment, then the bank must be held to assume the responsibility of obtaining information concerning the history of the checks. We think that the decision necessarily leads to the conclusion that a bank undertakes in the case of corporation depositors to answer (1) whether an officer drawing a check has general authority, and (2) with respect to checks to his own order which may be used for either proper or improper purposes whether particular ones are used in the one way or the other. Otherwise the bank does not stand in the shoes of the intermediate holder put upon inquiry and the defrauded depositor is remediless.

But notwithstanding the results which seem to follow the Court of Appeals decision, the authority of that court is so high and our respect for its opinion so great, that we hesitate to depart from it. But we are constrained to do so. The underlying proposition that a bank is the agent of its depositors to the extent stated is so contrary to the

principles which we regard as established in the law of banking, that we are unable to accept it.

[3] The relation existing between a bank and its customers growing out of the general deposit and the withdrawal of moneys is that of debtor and creditor and the courts, both in England and in America, have uniformly resisted all efforts to hold the bank as trustee, quasi trustee, factor or agent.[1] 1 Morse on Banks and Banking (4th Ed.) § 289. The parties deal at arms' length. This is true with respect to the nature of the deposit: It is well settled that all sums paid into a bank by different depositors form one blended fund and that the depositor has only a debt owing to him by the bank and not a right to any specific moneys. So, on the other hand, when the deposit is made, nothing short of payment will discharge the bank; the loss of the specific moneys deposited is immaterial. And in respect of the payment of checks, it is the duty of the bank when a properly drawn check is presented to pay it if there are sufficient available funds. But the bank does not make payment because it is the trustee or agent of the depositor. It makes it to discharge pro tanto the simple debt which it owes the depositor who by his check gives acquittance for it. When a corporation opens a deposit account with a bank the latter must be satisfied that the officer signing checks is authorized to do so and if it pay without question it takes the risk of being held still liable for the amount irregularly paid away. But the bank assures itself of the authority of the corporate officers for its own protection in discharging its indebtedness to the depositor and not as the agent of the latter. We think that it is not correct to say that a depositary bank is the agent of the depositor to determine whether a check drawn conforms to the contract between them. It rather determines the question at its peril.

[4] Not accepting then the proposition that the obligation of the defendant bank to the plaintiff was that of an agent, and looking at the case without regard to the previous litigation, we come to the inquiry whether, upon the facts and circumstances of this case, the defendant was put upon inquiry by the checks in question. So far as this defendant was concerned there was nothing suspicious about the checks except that they were drawn by the general fiscal officer to his own order and were indorsed by him; other similar checks had been drawn and paid before. The defendant did not know the history of the checks. It did not have the knowledge of the Knickerbocker Company that the treasurer was using the checks for his personal benefit. That which it knew was that which appeared on the checks themselves when presented for payment. It appeared that the treasurer might have been guilty of a breach of trust and have been attempting to misappropriate the moneys of his corporation. On the other hand there might have been no breach of trust. The checks might have been drawn in favor of the treasurer for entirely legitimate corporate purposes. Transactions were disclosed which might or might not have

---

[1] Of course a bank by particular contract may assume the functions of an agent and it is generally an agent for collection purposes. But these exceptions have no bearing upon the present case.

been breaches of trust according to circumstances unknown to the defendant. In such circumstances, we think that it was not the duty of the defendant to question the checks and that the language of Judge Hammond in Walker v. Manhattan Bank (C. C.) 25 Fed. 247, 255, upon an analogous subject, is applicable:

> "At all events the bailee must know that the contemplated appropriation is a breach of trust, not merely that a certain transaction is about to be consummated, which may or may not be a breach of trust, according to circumstances unknown to him." [2]

[5] It must be observed that we are far from holding that a bank is free under all circumstances to pay without question checks drawn by corporate officers to their own order. While a bank may deal with its depositors at arm's length, it must take care to pay out their moneys only upon authorized orders. If it fail to use due care it may be required to pay again. Consequently while in case of a corporate check signed by an officer with express or implied authority, the mere fact that it is drawn to his own order and therefore may be improperly used will not require the bank to question it. But if the bank have knowledge that the officer is using the check for his personal benefit, e. g. to pay his debt to the bank or to deposit it to his personal credit, then the bank is put upon inquiry and if it fail to make it, pays at its peril. But the bank owes this obligation not because it is the representative of the depositor but because it has no right to discharge its debts to its depositors except on their authorized orders and a check misused by a corporate officer cannot be regarded by a bank having notice of its misuse as an authorized order.

It must also be observed, from another point of view, that to relieve a bank from questioning the validity of checks in the form un-

---

[2] In the case referred to the court was considering the established rule that a banker cannot refuse to pay a check merely because he is aware of an intended breach of trust. Thus he is not justified in refusing to honor the checks of a depositor acting in a fiduciary capacity because he has reason to believe that the depositor is misappropriating funds. Gray v. Johnston, L. R. 3 H. L. 1; Keane v. Robarts, 4 Madd. 356; Merchants', etc., Bank v. Meyer, 56 Ark. 499, 20 S. W. 406; Goodwin v. American National Bank, 48 Conn. 550; also National Bank v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693. Of course these principles are only analogous to those involved in the present case. They have been placed upon the ground that the bank is not called upon to make itself a party to the inquiry between the trustee and his beneficiary—a third person—while here the corporation whose funds were misappropriated was not a third person but was itself the bank's customer. Still the treasurer of a corporation is its trustee. When he is authorized to draw checks the bank holding available funds is bound to honor them. And, in the absence of knowledge, this is true with respect to checks drawn to his own order because such checks may be for legitimate purposes. Certainly if a bank is not justified in refusing a trustee's check by incidental knowledge that he plans a misappropriation of funds, it is not required to question corporate checks by the mere fact that their form is adapted to permit a misuse of funds. On the other hand, as a bank is affected with knowledge of the misuse of trust funds when a depositor seeks to pay his own debt to the bank with funds to his credit in a fiduciary capacity, so it is proper that a bank should be put upon inquiry by information that an officer is using a corporate check for his own benefit. But there is nothing in the analogy which should push the bank's liability further.

der consideration, works no real injustice to corporation depositors. Corporations may protect themselves by requiring counter-signatures provided they notify the bank of the requirement. If they do not choose to do so it may fairly be presumed that they prefer the risk to the inconvenience. In such circumstances, it is not unfair to the depositor to say that if the bank have notice or knowledge of wrongdoing it must make inquiry, but that if nothing wrong in the history of a check is brought to its attention, it is not called upon to inquire about it; that a bank is not bound to question every corporate check regardless of amount—and manifestly no line can be drawn—merely because it is drawn by a corporate officer to his own order.

For these reasons, we think that as a matter of law upon the undisputed facts the defendant was not put upon inquiry by the face, form and contents of the checks and that the trial court, in submitting the question to the jury, gave the plaintiff more favorable instructions than it was entitled to. This conclusion disposes of the principal question in the case and renders unnecessary the consideration of the subsidiary questions relating to the defendant's duty if put upon inquiry and to the plaintiff's negligence. It also deprives of any prejudicial effect the rulings upon the examination of one of the plaintiff's officers.

[6] Only one more question need be considered. The by-laws of the plaintiff corporation were offered in evidence for the purpose of showing that two signatures were required upon all checks drawn upon its bank accounts and were not admitted. But there was no evidence offered to show that the defendant had any knowledge of this requirement or that it was customary. In the absence of such additional proof we think that the by-laws were properly excluded. A bank is undoubtedly held to a knowledge of all that the charter of a corporation depositor discloses as to the authority of its officers to withdraw moneys. It is also bound to know what the general laws under which the corporation is organized provide upon the subject. So, perhaps, it may be charged with notice of by-laws particularly authorized by the charter or general laws. But with respect to an ordinary by-law like the one in question, we think it the better view that it is incumbent upon the corporation to bring the by-law to the notice of the bank rather than for the bank to inquire whether such a by-law exists. Besides such by-laws may be waived, and they were undoubtedly waived in this case. The plaintiff knew for a considerable period before the time of the checks in question, that its checks were being paid upon one signature—that of its general fiscal officer—and made no objection. If there had been error in the ruling it would not have been prejudicial.

The judgment of the District Court is affirmed.