SMITH et al. v. BANK OF GLADE SPRING.

(Circuit Court of Appeals, Fourth Circuit. April 14, 1926.)

No. 2435.

**1. Banks and banking** ⬤⟶156, 161(1).

Bank handling negotiable paper for collection becomes customer's agent, and is required to exercise ordinary care and reasonable diligence.

**2. Trial** ⬤⟶228(1), 260(1).

Instruction need not be given in any particular form, and refusal of requested instructions covered by others given is not error.

**3. Banks and banking** ⬤⟶175(4)—Instruction as to collecting bank's duty to give notice of dishonor held not erroneous on theory that unusual duty to notify drawer of draft existed by reason of bank's knowledge of drawee's financial status.

Instruction that it was duty of a collecting bank to give notice of dishonor to person who sent check to it (a correspondent bank) *held* not erroneous, on theory that bank's knowledge of precarious financial condition of drawee imposed on it unusual duty to give notice directly to drawer; it not being clear that bank had such knowledge, while drawer did have knowledge of drawee's financial standing.

**4. Banks and banking** ⬤⟶175(4)—Instruction affecting collecting bank's duty in matter of giving notice of dishonor of draft held for collection held not erroneous.

In action for bank's alleged neglect and lack of diligence in collecting drafts, instruction that its noncompliance with directions to "wire nonpayment" would not make it liable, if a

posted notice given was equally effective under the circumstances, and which did not impose on bank duty of informing drawers directly of dishonor, *held* not erroneous.

**5. Carriers ⬤⟹74—Consignors, who were consignee's agent, held to have no right of stoppage in transitu.**

Consignors, who purchased hogs as agents of consignee, and drew drafts on consignee for price, *held* to have no right of stoppage in transitu.

In Error to the District Court of the United States for the Western District of Virginia, at Roanoke; Henry Clay McDowell, Judge.

Action by F. M. Smith and another, trading as Smith & Noe, against the Bank of Glade Spring. Judgment for defendant, and plaintiffs bring error. Affirmed.

J. P. Buchanan, of Marion, Va., for plaintiffs in error.

George Bryan, of Richmond, Va., and F. B. Hutton, of Abingdon, Va. (Hutton & Hutton, of Abingdon, Va., on the brief), for defendant in error.

Before WADDILL, ROSE, and PARKER, Circuit Judges.

WADDILL, Circuit Judge. The plaintiffs in error were plaintiffs in the District Court, and the defendant in error defendant therein, and they will be hereinafter referred to by their titles in that court. The case is an action at law in assumpsit, brought by the plaintiffs against the defendant to recover on three certain drafts drawn by plaintiffs on R. L. Keller, drawee, through defendant, the Bank of Glade Spring, Va., and upon which there is a balance due of $5,359.71. The cause of action arose, briefly, as follows:

Plaintiffs, F. M. Smith and W. R. Noe, partners trading as Smith & Noe in cattle at Morristown, Tenn., purchased a large number of hogs for the account of R. L. Keller, a dealer in live stock residing at Marion, Va., and, acting as agents for the said Keller, made the following shipments: On August 23, 1921, 75 hogs, to Hellstern & Sons, Richmond, Va.; on August 26 and 30, 1921, respectively, shipments totaling 215 hogs to Hellstern & Sons, Richmond, Va.; and on September 2d, 63 hogs, to the Aronhime Packing Company, of Bristol, Tenn.—all of said shipments being over the Southern Railway, and shipped in the name of Keller by plaintiffs as his agents. Plaintiffs drew drafts as follows upon Keller for the hogs shipped: On August 23, 1921, for $1,486.62, the price of the shipment of that date of 75

hogs; on August 29, 1921, for $4,558.83, the price of the 215 hogs shipped on August 26th and 30th; and on September 3d, for $1,242.06 for the shipment of 63 hogs of September 2d. All of said drafts were drawn upon Keller at sight, in the manner and at the place directed by him, at the Bank of Glade Spring, Glade Spring, Va.

The drafts in question were all placed to plaintiffs' credit by the First National Bank of Morristown, Tenn., on August 23, August 29, and September 3, 1921, respectively, and were forwarded by that bank by mail for collection to its correspondent, the Drovers' & Mechanics' National Bank of Baltimore, Md. The Baltimore bank received the drafts on August 23d, August 31st, and September 6th, respectively, and duly forwarded them to its correspondent, the National State & City Bank, at Richmond, Va., for collection, which bank in turn forwarded the same on the 26th of August, and the 1st and 7th of September, to the Glade Spring bank, for collection. The said drafts, however, were received at the Glade Spring bank several days later, to wit, September 2d, September 6th, and September 12th. Upon the receipt of the drafts by the Glade Spring bank, after diligent inquiry for the drawee, who could not be reached, and who had left neither the means to pay the drafts with, nor direction so to do, had means been available, the several drafts were dishonored and protested and returned by the Glade Spring bank to its correspondent bank at Richmond on the 7th and 14th days of September. During the dates of the transactions aforesaid, considerable money, indeed, apparently the proceeds of the sales of the hogs shipped, was deposited in the Glade Spring bank and checked out by Keller, the drawee of the drafts, but at the date of the receipt of the first draft, to wit, September 2d, only the nominal sum of $281.44 was to his credit in bank, and no amount of consequence was deposited during the time that the Glade Spring bank retained the drafts for collection, and for which no order was given to pay, as aforesaid. The drafts in question were never paid, save that the plaintiffs, who had paid, for their principal, Keller, cash for the hogs, received from him a sum sufficient to make their loss in the transactions $5,359.71, and it is for this balance that plaintiffs' claim is asserted, predicated upon the alleged neglect and lack of diligence on the part of the Bank of Glade Spring in the collection of the drafts thus forwarded to it through its correspondents, as above stated.

Plaintiffs insist that they sustained their loss by reason of the great delay that occurred between the deposit of the drafts by them with the Morristown bank and the date of their receipt by the Glade Spring bank, and their failure to receive notice of the dishonor and nonpayment of said drafts; that, after the receipt of the drafts at the Glade Spring bank, greater diligence should have been exercised by said bank, especially in view of the delay that was apparent, and the circumstances surrounding the transactions generally; and that the defendant bank should have notified plaintiffs as drawers of the nonpayment of the drafts in question.

Defendant, on the other hand, says that every duty that could reasonably have been imposed upon it was promptly performed on its part, and that it was in no manner liable for delay in the receipt of the drafts, and only responsible for what occurred after they were received; that it at once sought, without avail, the drawee, R. L. Keller; that it endeavored to reach him by telephone and mailed to him at his home address notice of the receipt of the drafts in question, and received from him no reply or authority to make payment of any sum on account of said drafts; that two of the drafts, received by it, respectively, on the 6th and 12th of September, were promptly returned, duly protested, on September 7th and September 14th; and that on the first draft, received on September 2d, longer time was taken, until the 7th of September, but all in the effort and expectation of being able to reach the drawee; that the defendant was under no obligation whatever to do more than it did, and certainly not to notify plaintiffs, who were the representatives of the drawee, and acted by his direction, and who had full knowledge, and opportunity of knowledge, as to his financial responsibility; that, so far from the loss being visited upon defendant by reason of the delay that took place in the presentation for collection of the drafts, plaintiffs should bear the same; that plaintiffs saw fit, instead of sending the drafts direct to the Glade Spring bank, a distance of only 88 miles from Morristown, and some 4½ hours by train, to have them placed to their own credit in the Morristown bank, and that institution forwarded the drafts for collection, not direct to Glade Spring, but by the circuitous route via Baltimore and Richmond, a distance approximately ten times greater than was actually necessary; and that in the meantime the principal, the drawee, checked from the defendant bank virtually the entire moneys to his credit, including the proceeds arising from the sale of the hogs, on account of payment for which the drafts were drawn.

Defendant duly appeared and interposed a demurrer to the declaration, which was overruled, and thereupon, upon the plea of general issue, the parties went to trial before a jury, and a verdict was returned in favor of the defendant, which was approved by the court, and to which action the writ of error in this case is sued out. The assignments of error are many in number, but they all turn upon the propriety of the court's instructions to the jury, and whether their verdict was supported by sufficient testimony.

We come at once to the consideration of the judge's ruling upon the instructions offered and refused, and to his charge as given, which were duly excepted to, for the reason that the errors, if any, in these respects, constitute the substantial basis for the writ of error herein. The questions of fact were settled by the jury's verdict, as the facts were largely in dispute, and no liability manifestly existed against the defendant, save for some actual omission of duty which resulted in the loss sued for.

[1] The legal questions for consideration by the court, which form the basis of the charge to the jury, relate directly to the liability of banks and commercial agencies in handling for collection negotiable paper intrusted to them in the due course of their business. Under such circumstances there can be no serious question but that the bank becomes the customer's agent, and is required to exercise ordinary care and reasonable diligence in the performance of the service undertaken.

[2] The instructions asked for by the plaintiffs, as well as those given by the court, largely relate to the obligations, the duty, and the responsibility of those so employed under the given circumstances, and the court cannot but believe that the court's charge, given in lieu of the instructions asked for by plaintiff, fully and correctly states the law as applicable to the particular facts in this case. It is true the instructions requested and refused in many particulars relate to and cover the same subject-matter, and in some respects state the law applicable thereto, but the court's charge applies to the entire case, and, in so far as it does, takes the place of the instructions requested, as the plaintiff's request need not be given in any particular form, provided the substance is not omitted.

The instructions given by the court are as follows:

"C1. The court instructs the jury that

the burden of proof rests upon the plaintiff and that this burden can be borne only by a preponderance of evidence supporting the contentions of the plaintiff, and if such preponderance, in your opinion, does not exist as to any issue you should find for the defendant as to such issue. And if the evidence leaves you in a state of complete doubt as to any issue you should decide such issue for the defendant.

"C2. A preponderance of evidence is evidence which outweighs, that is, evidence which in your opinion is better entitled to belief than the opposing evidence.

"C3. In view of the construction by the defendant of the wording of the three drafts in respect to the place of payment and hence in respect to the place where presentment for payment should have been made, you are instructed that the defendant's place of business (its bank) was the place of payment.

"C4. The duty of the defendant in respect to the time when presentment for payment of each of the three drafts should have been made was to make such presentment within a reasonable time after the receipt by the defendant of each of the several drafts.

"C5. In determining what was a reasonable time, you should have regard to the nature of the instruments in question, the usages of the business, if any, and all of the facts and circumstances known to the defendant at the time.

"C6. A draft which is not paid when presentment for payment is made at the place of payment and within a reasonable time is said to be dishonored. And notice of dishonor must be given by the collecting bank to the person (here the National State & City Bank of Richmond) who sent such draft to the collecting bank.

"C7. In view of the printed instructions sent to the defendant bank with each of the three drafts by the Richmond bank, it was the duty of the defendant on the day of dishonor of each of the drafts (except possibly as to the second draft as hereinafter set out) to notify the Richmond bank by telegraph of the failure to collect. The duty of the Richmond bank upon receiving any such notice from the defendant was merely to send notice of dishonor to the Baltimore bank by mail, deposited in the post office at Richmond in time to go forward the day after the receipt of notice by the Richmond bank. The duty of the Baltimore bank, upon receiving any such notice from the Richmond bank, was to telegraph the Morristown bank on the date of the receipt of each such notice. The duty of the Morristown bank was to send or give notice of dishonor to the plaintiff firm within the time that such notice would be received in due course of mail, if it were put in the post office at Morristown in time to go by the mail of the day following the receipt of each such notice by the Morristown bank. But in respect to the $4,558.83 draft, if you believe that mailing notice of protest to the Richmond bank on the day of the dishonor of said draft was practically as effective as would have been a literal compliance with the printed instructions to 'wire nonpayment,' you should hold the defendant without fault in not telegraphing on the day of the dishonor of said above-mentioned draft.

"C8. If you believe from the preponderance of the evidence that the defendant did not make presentment for payment of any draft within a reasonable time, the defendant may be liable for the resulting loss to the plaintiff, if any, as hereinafter stated. For its failure to send notices of dishonor to the Richmond bank by telegraph, as set out in instruction C7, the defendant may be liable for the resulting loss to the plaintiff (if any) as hereinafter stated. The liability above mentioned cannot in any event exceed the actual loss of the plaintiff firm other than such loss as you believe from the evidence the plaintiff would have suffered if the defendant had done all that you believe it should have done.

"C9. You are further instructed that the plaintiff in this case had no right of stoppage in transitu with respect to any shipment of hogs mentioned in the evidence."

A careful examination of the court's charge will show that it has special application to the facts as bearing upon the crucial points in this case, and that it plainly and succinctly lays down the law that should control and govern the jury in the consideration of the same.

The plaintiffs' exceptions to three of the instructions of the court, viz. C6, C7, and C9, are as follows:

"Whereupon, the plaintiff objected to the action of the court in giving instruction No. C6 because under the evidence in this case it was urged that there was, in addition to the usual duty of the defendant bank in the handling of the drafts in question in this case, an additional duty, where the bank knew all the facts and circumstances showing the precarious financial condition of the drawee, which, if communicated direct to the drawer, would have enabled the drawers to have saved their money.

"And plaintiff objected to instruction C7 upon the ground that the question as to whether or not the bank exercised due diligence in regard to the $4,558.83 draft is ignored. By this instruction, the court told the jury that, no matter whether the bank was negligent or not in making dishonor, if, on the day it did dishonor, whether negligent or not, it sent the notice, it is not liable. It is further objected to on the ground that the plaintiff does not claim the amount of the draft as a measure of damages but merely the damage resulting from failure to give proper notice and use reasonable care and the natural result of this instruction would be to tell the jury that, if notice of protest was mailed on the day of dishonor, the jury could deduct from any judgment the face of the draft amounting to $4,558.83. It was objected to further because it ignores the theory entirely that the entire damage resulting in this case was caused by failure to protest and give notice of dishonor of the first draft. It is also objected to on the ground that under the evidence in this case notice should have been given direct.

"And the plaintiff objected to the instruction No. C9 upon the ground that the right of stoppage in transitu did exist in the plaintiff in this case under the evidence."

[3] Plaintiffs' exception to instruction C6 is clearly without merit, for the reason, if no other, that it is not at all clear that the bank knew of the precarious financial condition of the drawee of the drafts in question; and it is practically certain that the plaintiffs, drawers of the drafts, to whom it is insisted notice should have been given, did know of such condition, and the general financial status and standing of the said drawee, for whom they were acting in the transactions. [4] Plaintiffs' exception to instruction C7 is also without merit, in that the court told the jury, in effect, that, if a letter inclosing notice of protest would have informed the National State & City Bank, the sender of the drafts to the defendant bank, as soon as telegraphing them the information, then the failure to telegraph would not render the defendant liable; and the instruction, in so far as it failed to impose upon the defendant the duty of informing the drawers of the drafts of their dishonor, was clearly right, and especially so under the facts of this case, where the drawers of the drafts were acting as the agents and representatives of the drawee. [5] Plaintiffs excepted to instruction C9, in that it informed the jury that the plaintiffs in the case had no right of stoppage in tran-

situ with respect to any of the shipments of hogs, which might have formed a basis of recovery against the defendant. This instruction was plainly right, and especially so in view of the relations existing between the parties to the transactions.

Considering the exceptions of plaintiffs, and the assignments of error based thereon, predicated upon the court's refusal to set aside the verdict and grant a new trial, and the entry of judgment upon the verdict, there was no error in what the court did, assuming that its action could be the subject of review. It is not contended that there was an absence of evidence to support such findings; on the contrary, it may be said that the testimony fully sustained the jury's findings, with which, as well as the court's action thereon, this court is in full accord.

Affirmed, with costs to defendant in error. Affirmed.