## LINCOLN OIL PRODUCING CO. v. CLARK NAT. BANK.

Circuit Court of Appeals, Sixth Circuit. October 11, 1929.

J. Verser Conner, of Louisville, Ky. (Beverley R. Jouett, of Winchester, Ky., and Booth & Conner, of Louisville, Ky., on the brief), for appellant.

D. L. Pendleton, of Winchester, Ky. (Pendleton & Bush, of Winchester, Ky., and Trabue, Doolan, Helm & Helm, of Louisville, Ky., on the brief), for appellee.

Before DENISON, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge. In 1917 J. C. McCombs owned about 24 acres of oil producing lands in Estill county, Ky. He also owned oil and gas leases on about 1200 other acres. On August 7, 1917, he entered into an agreement with H. A. Moore in furtherance of which on September 7, 1917, they organized the McCombs Oil Company, a corporation under the laws of Delaware. This corporation later became the McCombs Producing & Refining Company, and finally the Lincoln Oil Producing Company, the present plaintiff. It had an authorized capitalization of 5,000,000 shares of the par value of $1 per share. A board of directors elected by the organizers of the corporation held its first meeting in Louisville on September 14, 1917. At this meeting, to carry out the agreement of August 7th between McCombs and Moore, the company by resolution purchased the McCombs property for $312,000 and the 5,000,000 shares of its capital stock in addition. The purchase money was not paid. It was, however, arranged for by an agreement whereby McCombs was to transfer 1,000,000 shares to the company to be known as treasury stock out of the proceeds of the sale of which McCombs was to be compensated.

At a directors' meeting held in connection with the stockholders' meeting on September 18, 1917, there was a mutual arrangement for a distribution of stock. It is material here to only state that there was set aside to the company as treasury stock 2,500,000 shares and to Moore 687,490 shares. The remainder of the stock was distributed to other stockholders in varying amounts.

On November 30, 1917, McCombs purchased from Moore the 687,490 shares of stock assigned to him and agreed to pay therefor $62,500 or to deliver to Moore 62,500 shares of the stock which was at that time being held in escrow by the United States Trust Company of Louisville. This contract was assigned by Moore to his attorney, Newton W. Gilbert. Thereafter Mrs. Moore brought an action for divorce in which she sought alimony. During this litigation the contract between Moore and McCombs came to light, and it was further developed that McCombs had assigned his interest therein one-fourth each to Abram Renick, F. W. Davis, and J. McLaughlin, retaining one-fourth to himself. Mrs. Moore pressed her claim for alimony against all of these parties as garnishees. A settlement resulted whereby Renick, McCombs, Davis, and McLaughlin executed a series of four notes each dated April 1, 1919, as follows:

(1) Note A, due in 7 months, payable to Newton W. Gilbert, for $16,250.

(2) Note B, due in 60 days, payable to Sarah D. Moore, for $10,000.

(3) Note C, due in 60 days, payable to Newton W. Gilbert, for $8,000.

(4) Note D, due in 60 days, payable to Newton W. Gilbert, for $2,000.

In addition McCombs and Renick each paid $10,000 in cash, making a total payment of $56,250 in full settlement of the $62,500 claim.

On April 19, 1919, at a directors' meeting the corporation contracted in writing

with McCombs, Davis, McLaughlin and Renick whereby said parties sold to it the 687,500 shares of stock purchased from Moore for which the corporation agreed to pay McCombs and Renick $27,620, which they insisted had been paid by them on account of the purchase from Moore, and to assume the obligation to pay $28,650, the balance then due as represented by the notes aforesaid. This written contract, however, was never formally authorized or ratified by any resolution of the board, but in furtherance of it on May 24, 1919, there was executed to McCombs a note (note E) for $10,000 due in 4 months signed, "McCombs Producing & Refining Co. by Abram Renick, President, and J. C. McCombs, Treasurer," and at the same time a similar note (note F) was executed to Abram Renick for $10,000 and a similar note (note G) to Abram Renick for $4,095.41. Any further consideration of the last-mentioned note is immaterial.

Note A for $16,250 payable to Gilbert was sold before maturity to McCombs at a discount. By direction of Gilbert it was forwarded to defendant bank for collection from McCombs. Defendant collected from McCombs and remitted to Gilbert and delivered the note to McCombs. There is some indication that McCombs then placed it with defendant bank as collateral security for another note of his but in our opinion the weight of the proof is to the contrary.

At that time the corporation had its main office in Louisville and kept an account with the National Bank of Kentucky there. Before the maturity of this note at the request, by telephone, of C. H. Cannon, assistant cashier of the corporation, defendant bank drew on the corporation at Louisville, through the National Bank of Kentucky, for the amount of it. The corporation honored the draft and paid it by check upon the National Bank of Kentucky, at Louisville, signed by C. H. Cannon, treasurer, and countersigned by J. C. McCombs, president. The Louisville bank remitted to defendant bank, and the amount of the note was placed to the individual credit of McCombs in defendant bank.

Notes B, C, and D, called the Sarah Moore notes, for $10,000, $8,000, and $2,000, respectively, were forwarded by the owners before maturity to defendant bank for collection and were presented to McCombs, who was at that time treasurer of the corporation, and McCombs paid all of said notes to defendant bank by check upon the deposit of the corporation then being carried in defendant bank. It appears that at that time the corporation

had its home office in Winchester, where the banking house of defendant was also located.

Note E, for $14,095.41, payable to McCombs, was placed by him with defendant for collection. On November 12, 1919, the defendant by its assistant cashier wrote to C. H. Cannon, the treasurer of the corporation at Louisville, that the bank had this note for collection, and on November 28th defendant advised Cannon, treasurer, that it had on that date sent the note to the National Bank of Kentucky for collection according to instructions received from McCombs. This note was paid in due course to the National Bank of Kentucky by check of the corporation signed by C. H. Cannon, treasurer, and countersigned by McCombs, president, and the proceeds were remitted by the Louisville bank to defendant and were placed by it to the individual credit of McCombs.

Note F, for $10,000, payable to Abram Renick, was indorsed by Renick to the Winchester Bank, another bank at Winchester, Ky., which bank brought suit thereon against the corporation and Renick and recovered judgment. The corporation failing in its effort to obtain a new trial on a stay of execution paid this judgment by check dated November 24, 1920, signed by E. Y. Conklin, then treasurer, and countersigned by J. C. McCombs, president.

On September 15, 1919, George J. Ogle and others, composing a protective committee of minority stockholders in the corporation, filed a petition in equity in the appropriate Kentucky court against the corporation and those in control of it, including Renick and McCombs, in which it sought to cancel for fraud, as being without consideration, a large number of shares of the stock of the corporation, including the 687,500 shares sold by McCombs et al. on April 19, 1919, to the corporation. Plaintiffs in that suit were successful and the stock was canceled. McCombs Producing & Refining Co. v. Ogle, 200 Ky. 208, 254 S. W. 425. In that case defendant bank was made a party defendant for certain purposes, as were also all of the parties concerned in the transaction by which the Moore stock was transferred to McCombs. The petition therein alleged that the Moore stock had been transferred to the McCombs Company, and the answer and amended answer thereto set out the details of the transaction by which the McCombs Company executed the aforementioned notes as consideration for the stock, but no attack was made in that suit upon the transaction by which the company acquired

this stock, and no relief was sought against the defendant bank with reference thereto. In 1920 this protective committee on behalf of the corporation brought suit against Renick and others to recover of them the amount paid by the corporation for the Moore stock because of the alleged fraud, but this suit was never prosecuted because the defendants therein were by that time insolvent. In an independent suit a receiver was appointed for the company on September 30, 1921. He was discharged one year later. During his incumbency he made no effort to join in the pending suit of the minority stockholders to cancel the Moore stock or to question defendant's connection therewith. After the termination of the receivership, the minority stockholders acquired control. Jarvis, who was treasurer from July to September, 1919, and who was a member of the protective committee, became and still is president of the corporation.

On April 21, 1925, this suit was brought by the company. The gravamen of the bill is that the sale of the Moore stock to the corporation was fraudulent and void; that the stock itself was worthless; that its board of directors never authorized or ratified its purchase by any proper resolution; that the notes given therefor were unauthorized; and that the payment thereof by checks drawn upon the deposits of the corporation in the Louisville bank, an independent bank, constituted a fraud, which defendant bank aided and assisted the officers of the corporation to consummate, (1) by the collection and paying over to McCombs note A for $16,279.79 and note E for $14,095.41, and (2) by the payment of the other checks mentioned out of funds of the corporation deposited with defendant. The District Judge dismissed the bill, and we concur. The defendant had no knowledge of any infirmity in any of these notes except such as appear upon their face. It derived no benefit from any of the checks or the notes, except perhaps small collection fees. It was guilty of no affirmative or intentional wrong. U. S. F. & G. Co. v. Union B. & T. Co., 228 F. 448, 451 (C. C. A. 6). As applicable to notes A and E the defendant bank was simply the agent of McCombs, their holder, for collection. Ward v. Smith, 74 U. S. (7 Wall.) 447, 453, 19 L. Ed. 207, 210; Smith et al. v. Bank, 12 F.(2d) 535, 536 (C. C. A. 4). When McCombs directed defendant to draw upon the corporation for payment of note A which bore his signature as one of the makers and afterwards countersigned the check for such payment, this standing alone might seem to cast a shadow upon the transaction; the effect of it was to pay this note out of corporation funds, and, nothing else appearing, there are cases holding that the defendant would be bound by any information which it could have obtained had it pursued inquiry as to whether such withdrawal was or was not a corporate transaction [but see Maryland Co. v. City Bank (C. C. A. 6) 29 F.(2d) 662, 663]. It appearing, however, that Cannon, the treasurer, directed defendant to send the draft to Louisville for collection, that he also signed the check in payment thereof as treasurer, and that the corporation's bank at Louisville paid the check and remitted the proceeds, we conceive that defendant was therefore justified in accepting the fund and placing it to the credit of McCombs. It certainly was not required to go to the extent of inquiring whether either the note or check had been authorized by the board of directors or whether there lurked within the transaction the possibility of some future complaint by minority stockholders. The requirement of such extraordinary precaution is overburdensome. See Empire Trust Co. v. Cahan, 274 U. S. 473, 479, 47 S. Ct. 661, 71 L. Ed. 1158, 1161, 57 A. L. R. 921.

As to note E: The only unusual feature appearing on the face of it is that, although signed in the corporate name by Renick, president, and McCombs, treasurer, it was payable to McCombs. But corporations do frequently execute notes payable to their officers and this circumstance did not justify the conclusion that a breach of trust had been committed by McCombs or that a misapplication of funds was intended by him. He was in the full confidence of the defendant. He carried a large personal account with it and had instructed the bank to use his account to protect the account of the corporation against overdrafts. As applicable to both notes A and E, the defendant had no sufficient reason to suspect dishonesty of either McCombs or Cannon, the treasurer, and having collected and paid over the full proceeds of these notes its full duty was discharged. Hooper v. Robinson, 98 U. S. 528, 541, 25 L. Ed. 219, 222.

Notes B, C, and D stand on a somewhat different footing. They were each forwarded by their respective holders to defendant bank for collection and were paid by check of McCombs, treasurer, out of the corporation funds on deposit in defendant bank. The fact that the notes were signed by McCombs as one of the makers would naturally create suspicion but the checks were regular in

form. Defendant bank was not the agent or trustee of the corporation. Its relationship to the corporation was simply that of debtor and creditor. Phœnix Bank v. Risley, 111 U. S. 127, 4 S. Ct. 322, 28 L. Ed. 375. It was bound to honor the checks of the corporation when drawn in proper form as long as there were sufficient funds. Central National Bank of Baltimore v. Connecticut Mutual Life Ins. Co., 104 U. S. 54, 64, 26 L. Ed. 693; Cunningham v. Merchants' National Bank, 4 F.(2d) 25, 29, 41 A. L. R. 529 (C. C. A. 1). The three transactions may or may not have been wrongful, but defendant bank was not justified in assuming that they were. Havana Central R. Co. v. Central Trust Co. (C. C. A.) 204 F. 546, 550, L. R. A. 1915B, 715; Goodwin, Admr., v. Bank, 48 Conn. 551, 568; Kendall v. Fidelity Trust Co., 230 Mass. 238, 241, 119 N. E. 861; Helena v. First National Bank of Helena, 173 Ark. 200, 292 S. W. 140. The defendant was not required to set up a supposed jus tertii as between the holders of these notes and the corporation or any relations between the corporation and minority stockholders, as an excuse for its failure to pay these checks. Walker v. Bank, 25 F. 247, 255 (C. C.); Havana Central R. Co. v. Central Trust Co., supra; Morse on Banks & Banking (6th Ed.) § 317; Duckett v. Mechanics' Bank, 86 Md. 400, 405, 38 A. 983, 39 L. R. A. 84, 63 Am. St. Rep. 513; Mass. B. & Ins. Co. v. Standard T. & Sav. Bank, 334 Ill. 494, 166 N. E. 124, 125.

Note F is upon its face in the same category as note E. It was paid just as were notes B, C, and D by check signed by Conklin, treasurer, and countersigned by McCombs, president, as was note A. What has been said therefore as to these foregoing notes is likewise applicable to note F. In addition, if defendant had known that the Winchester bank had taken judgment upon note F, this would certainly have allayed any suspicion touching it, and defendant is entitled to have the case viewed just as if it had possessed that information. Wilson v. Metropolitan El. Ry. Co., 120 N. Y. 145, 24 N. E. 384, 17 Am. St. Rep. 625; Buckley v. Lincoln Trust Co., 72 Misc. Rep. 218, 131 N. Y. S. 105, 107.

■ Finally, there is merit in the defense of laches and in the observation of the District Judge that plaintiff's claim is stale. Without detail, the testimony of Jarvis, plaintiff's president and its principal witness, convinces that there was no impediment to an earlier prosecution of it. All of the essential facts were either of record or could have been read-

ily ascertained during the days of the activities of the protective committee and of the receiver as well as from October 1, 1922, when the corporation was restored to its present control. The suit was not brought until April, 1925. In the meantime, of those primarily liable, if liability existed, some were dead, some were gone from Kentucky, and some insolvent. The delay has worked a disadvantage a court of equity should not ignore.

Upon both grounds, the decree of the District Court is affirmed.